MISSOURI PACIFIC TRANSPORTATION COMPANY v. JOHNSON.

4-5410                                          126 S. W. 2d 931

Opinion delivered April 3, 1939.

1130

*Huie & Huie, House, Moses & Holmes* and *Eugene R. Warren,* for appellant.

*G. W. Lookadoo* and *J. H. Lookadoo,* for appellee.

GRIFFIN SMITH, C. J. Appellee's judgment for $3,000 was rendered on a jury's verdict finding that such amount should be paid to compensate personal injuries appellee sustained when she boarded appellant's bus.

The six assignments of errors urged are: (1) That no liability was shown, and therefore a verdict should have been instructed for the defendant. (2) That defendant's motion for a continuance should have been granted. (3) That the court arbitrarily limited the defendant to thirty minutes within which to produce witnesses for examination, such witnesses or affiants having executed affidavits to the effect that defendant could not secure a fair trial in Clark county. (4) That the court arbitrarily refused to allow defendant's attorneys to examine the jury panel. (5) That defendant was prejudiced by the court's announcement that "We are going to finish this trial today or tonight, and you can act accordingly." (6) That defendant's supplemental motion for a new trial should have been granted.

We are of the opinion that there was sufficient evidence to go to the jury on the question of negligence. Assignments 2, 3, 5, and 6 will not be discussed because the judgment must be reversed on the fourth. assign-

ment—"The court arbitrarily refused to allow defendant's attorneys to examine the jury panel."

The bill of exceptions shows the following proceedings: .

"THE COURT: Gentlemen, are any of you witnesses in this case? (No answer.) THE COURT: Do you know anything at all about the facts in this case? (No answer.) THE COURT: Have you formed or expressed an opinion as to the merits of this case? (No answer.) THE COURT: Are any of you related by blood or marriage or by any existing contract with the plaintiff, Mrs. Earl Johnson, or with the defendant, Missouri Pacific Transportation Company? (No answer.) THE COURT: Gentlemen, have you any bias or prejudice for or against either party? (No answer.) THE COURT: Is there anything at all in your minds that would hinder you in any manner or degree in fairly arriving at a fair and impartial verdict in this case? (No answer.) THE COURT: Is there any reason at all, if selected on this jury, why you could not do equal justice to either side? (No answer.)

"MR. HUIE (one of the attorneys for defendant): I would like the privilege of examining each juror individually. THE COURT: That will be denied. The court will examine them on any question you want. (The defendant objected to the above ruling of the court and at the time asked that its exceptions be noted of record, which was accordingly done).

"THE COURT: Do you care to have the court ask any questions? MR. HUIE: Will the court ask the jury as a whole, or individually, if they are under any obligation to the attorneys for the plaintiff? THE COURT: This is addressed to each of the jury: Are any of you under any obligations to either of the attorneys for the plaintiff, Mr. J. H. Lookadoo or Mr. G. W. Lookadoo? (No answer).

"MR. HUIE: I would like to ask if either of the attorneys for the plaintiff has befriended any one of the jurors in such a nature that he would feel more kindly in this case toward rendering a decision in favor of one who had represented him. THE COURT: Gentlemen of the jury, is there any personal relation, or has there been,

between any of you and the attorneys for the plaintiff that would cause you to lean or be baised, or have a leaning of mind toward that side of the case? (Addressing Mr. Huie): Does that meet it? MR. HUIE: Yes, that is, it in substance. (No answer).

"MR. HUIE: I would like to ask this question: How many of the jurors have served in cases against corporations in the last two or three years and where there was always rendered a verdict in favor of the plaintiff against a corporation? THE COURT: I will not ask a question like that. The records are open here, and you can look at the records. (Objection and exceptions).

"MR. HUIE: Ask whether or not, where the plaintiff is a private individual and the defendant is a corporation, they would lean more toward the side of the individual than they would toward the corporation. THE COURT: Gentlemen of the jury, the plaintiff is a natural person: that is, just a person. The defendant is a corporation: a person created by law. Now, this is a suit between a person and a corporation. Can you, and will you, if accepted on this jury, try the case and render to both parties, regardless of the character of the entity, the same fair and impartial trial and give each side the same consideration as you would if both were corporations, or both were natural persons? (No answer).

"MR. HUIE: Ask whether or not any of the jurors have been, or are, under any obligation to either one of the attorneys for the plaintiff? THE COURT: Well, Gentlemen, I will ask if any of you have ever been obligated to either of the attorneys for the plaintiff in this case, or if there is anything in your mind that would prevent you in any manner or degree from rendering fair justice in this case? You are all sworn to try the case according to the law and evidence: are you willing to do that? THE COURT: They say they are. Is that all? Is that all? Is there anything else? (No response).

Appellee relies upon § 16 of Initiated Act No. 3, which appears as § 3996 of Pope's Digest, to support the conduct of the trial court in refusing to permit attorneys for the defendant to interrogate members of the jury

panel. The section of the Act is : "In all cases, both civil and criminal, the court shall examine all prospective jurors under oath upon all matters set forth in the statutes as disqualifications. Other questions may be asked by the court, or by the attorneys in the case, in the discretion of the court."

In *Baldwin et al., Trustee Missouri Pacific Railroad Company* v. *Hunnicutt*,[1] (supplemental opinion on rehearing, pages 445-446) there is a discussion of the contention made by counsel for appellee that they "did not know of any provision of law in this state that entitles either party to a civil suit to have each proposed juror stand and be separately interrogated by counsel." The opinion directs attention to § 6380 of Crawford & Moses' Digest, now § 8342 of Pope's Digest, and says: "This court has recognized the right of litigants in civil cases to examine the jurors separately." *St. L., I. M. & S. R. Co.* v. *Aiken*.[2] Trial of the cause upon which appeal in the Hunnicutt Case was predicated occurred prior to adoption of Initiated Act No. 3. We said in that case: "The discretion which rests in the trial court does not relate to the right to examine jurors separately, but only to the *extent* of the examination of each separate juror." Otherwise expressed, it was meant that the trial court did not have the right to absolutely deny separate examinations, but the extent to which such examinations might be carried was a matter resting within the sound discretion of the court.

The opinion in the Hunnicutt Case quotes with approval the following declaration of the law, as construed by Corpus Juris:[3] "The extent to which parties should be allowed to go in examining jurors as to their qualifications cannot well be governed by any fixed rules. The examination is conducted under the supervision and direction of the trial court, and the nature and extent of the examination and what questions may or may not be answered must necessarily be left largely to the sound

---

[1] 192 Ark. 441, 93 S. W. 2d 131, 192 Ark. 445, 93 S. W. 2d 133.

[2] 100 Ark. 437, 140 S. W. 698.

[3] Corpus Juris, v. 35, p. 389, § 439.

discretion of the court, the exercise of which will not be interfered with unless clearly abused. In practice, considerable latitude is and generally ought to be indulged; the questions ought to be confined to matters directly affecting the legal qualifications of the juror, and all questions ought to be allowed which are pertinent to test the juror's competency. But such examination ought not to be permitted to take an indefinitely wide range concerning merely collateral matters. . .''

The last paragraph of the Hunnicutt opinion (page 447) states: "We are, therefore, of the opinion that litigants in civil cases, as well as in criminal cases, have the right to examine the jurors separately in order to determine whether such jurors are subject to challenge for cause, or to elicit information on which to base the right of peremptory challenge, subject of course to the right of the court to control the extent of such examination, acting in its sound discretion.''

We do not think it was the purpose of Initiated Act No. 3 to change this rule. There is no express language to that effect, nor is such purpose to be implied from the phraseology. The first sentence of § 16 affirmatively imposes upon the trial court the duty of examining prospective jurors "upon all matters set forth in the statutes as disqualifications.'' This the court *shall* do, without suggestion from counsel on either side of the controversy, and the juror must respond, even though silence may be construed to denote acquiescence.

But—

"Further questions may be asked by the court, or by attorneys in the case, in the discretion of the court.''

All trial lawyers, and all students of the science of jurisprudence, know that *general* questions directed to the jury panel, or to individual jurors, by a judge who at the beginning of the trial has no special information regarding the issues, or the relationship of the parties, or the attending circumstances, sometimes fail to elicit answers which may cause even the most conscientious juror to reveal an existing prejudicial status.

What *are* the further questions that may be asked by the court, or by the attorneys in the case? The answer is that they include any pertinent inquiry respectfully addressed through which qualification may be determined, or by which counsel, regardless of the juror's qualification, may secure information upon which to predicate peremptory challenge. Discretion of the court, to which reference is made in the last sentence of § 16 of the initiated Act, goes to the proposition of curbing improper questioning. It does not invest trial courts with an arbitrary, all-powerful authority to transform discretion into prohibition; nor does it require that in the process of ascertaining the desired facts counsel must utilize the court as a conduit through which communication must be megaphoned to jurymen by way of the dais.

There is nothing in the initiated Act that changes the practical application of rules so well known to the practice.

Some of the questions asked by counsel for appellant were improper and the court correctly excluded them. For example, it was not essential that the defendant should know "how many of the jurors had served in cases against corporations in the last two or three years, where there was always rendered a verdict in favor of the plaintiff against a corporation."

Yet, before this question was asked, the court had definitely declined to permit the defendant's attorney (Mr. Huie) to examine each juror individually.

For this error the judgment is reversed. The cause is remanded for a new trial.