PEOPLE v HARRELL

1. WITNESSES—RES GESTAE—INDORSEMENT.

A res gestae witness whose identity is unknown to the prosecutor either at the time the information is filed or at the time of trial need not be indorsed.

2. JURY—VOIR DIRE—JUDICIAL DISCRETION.

The extent of allowable voir dire is largely a matter of judicial discretion and the court is not required to conduct the voir dire in the precise language proposed by counsel.

3. JURY—VOIR DIRE.

A defendant was not denied a trial by a fair and impartial jury because the trial court failed to ask the prospective jurors a list of questions, submitted by the defendant, relating to racial prejudice where the court's voir dire covered the subject generally and was sufficient to afford the defense attorney information necessary to challenge the prospective jurors, and where the defense attorney did not exhaust his peremptory challenges and expressed satisfaction with the jury at the end of the voir dire.

4. APPEAL AND ERROR—EVIDENCE—JUDICIAL DISCRETION.

Decisions on the materiality and relevancy of proffered evidence are within the discretion of the trial court, and review of a decision to admit or exclude that evidence is limited to a determination of whether the trial court abused its discretion.

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.

[2] 47 Am Jur 2d, Jury §§ 200, 201.

[3] 47 Am Jur 2d, Jury §§ 200, 201, 284.

Racial, religious, economic, social, or political prejudice of proposed juror as proper subject of inquiry or ground of challenge on voir dire in criminal case. 54 ALR2d 1204.

[4] 5 Am Jur 2d, Appeal and Error §§ 737, 738, 772–774, 880–883.

[5] 5 Am Jur 2d, Arrest § 80 et seq.

[6] 58 Am Jur, Witnesses § 674 et seq.

[7] 58 Am Jur, Witnesses § 865.

[8] 53 Am Jur, Trial §§ 787, 795.

5. CRIMINAL LAW—ELUDING POLICE OFFICERS—ELEMENTS OF CRIME—STATUTES.

The fact that a defendant intentionally and knowingly attempted to elude police officers is sufficient to warrant a finding that he did so willfully in violation of the statute (MCLA 750.479[a]).

6. CRIMINAL LAW—EVIDENCE—WITNESSES—IMPEACHMENT—BIAS:

A witness under attack must first have been questioned about the facts and cross-examined before the witness can be impeached by calling other witnesses to prove acts or declarations showing bias; therefore, testimony offered to show that a police officer was biased against blacks was properly excluded where a proper foundation was not laid.

7. CRIMINAL LAW—EVIDENCE—WITNESSES—IMPEACHMENT—HARMLESS ERROR.

A witness who testifies that he does not remember the occurrence of a specific event may not be impeached by testimony that the event occurred; thus admission of the testimony of a doctor that a defendant's mother had refused permission to take a sample of her son's blood to determine whether or not he was intoxicated, after the mother testified that she did not recall refusing such permission, was error; however, because the testimony was upon a collateral issue which had no relation to the defendant's guilt or innocence of the crime charged, such error was harmless.

8. CRIMINAL LAW—EVIDENCE—INSTRUCTIONS TO JURY.

Failure to give a limiting instruction to the effect that certain rebuttal testimony was relevant only to the credibility of a witness is not reversible error absent a proper request for such an instruction or an objection.

Appeal from Jackson, Gordon W. Britten, J. Submitted Division 2 June 3, 1974, at Lansing. (Docket No. 13068.) Decided August 12, 1974.

Walter G. Harrell, Jr., was convicted of assaulting a police officer and of fleeing and eluding a police officer. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,*

Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*Marshall S. Redman,* Assistant State Appellate Defender, for defendant.

Before: McGregor, P. J., and R. B. Burns and O'Hara,* JJ.

McGregor, P. J. Defendant was convicted by a jury of assaulting a police officer, MCLA 750.479; MSA 28.747, and fleeing and eluding a police officer, MCLA 750.479(a); MSA 28.747(1). On December 23, 1971, defendant was sentenced to 6 months in jail and $150 costs, or an additional 30 days in jail on one count, and a suspended sentence of $100 fine and $100 costs on the other count.

Because defendant does not challenge the sufficiency of the evidence to support the convictions, we need not set out at length the conflicting testimony adduced at trial. For our purposes here, it is sufficient to summarize the opposing versions of what transpired on New Year's Eve, 1970.

According to testimony presented by the people, two Jackson police officers attempted to stop a vehicle operated by the defendant for a minor traffic offense. Rather than heeding the officers' directions that he pull over, the defendant led them on a high speed vehicular chase through the streets of Jackson, committing additional traffic violations in the process. Unsuccessful in his attempts to elude the officers by automobile, defendant parked his car in front of a residence located on Euclid Street and ran to the back door of the house. While defendant was trying to enter the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

house by that door, the law, in the form of one patrolman Williams, caught up with defendant. Officer Williams placed defendant in a "bear hug" and advised him that he was under arrest for fleeing a police officer. Officer Williams testified that, as he started to bring the defendant around the house towards the street, the defendant struggled, tried to break the officer's hold, and attempted to trip him. Officer Williams then put defendant to the ground and unsuccessfully endeavored to handcuff his hands behind his back. At this point, 10 or 15 people emerged from the house, one identifying herself as the defendant's mother. Apparently sympathizing with defendant's plight, the assembled citizens threateningly demanded his immediate release; resorting to a more basic level of communication, members of the group allegedly struck the officer. Officer Williams was soon joined by one Officer Fredericks, but due to physical harrassment by the crowd, they were unsuccessful in handcuffing the defendant. When additional police reinforcements arrived on the scene, the defendant was handcuffed and dragged to a waiting cruiser. Officer Williams testified that prior to being handcuffed, the defendant hit, bit, and kicked him.

Testimony elicited by the defense tended to indicate that defendant violated no traffic ordinances; that he attempted to elude the police when they turned on their sirens because he had been beaten by police officers two nights before this incident; that he did not kick, hit, or bite anyone; and finally, that the police officers, without provocation, physically assaulted him.

On appeal, defendant raises seven issues for our consideration. Further pertinent facts will be given in our discussion of those issues.

Defendant first contends that the prosecutor's failure to endorse certain res gestae witnesses was reversible error.

At trial, defense counsel objected to the prosecuting attorney's failure to endorse certain unspecified res gestae witnesses (apparently those who witnessed the altercation between the police and the defendant, numbering at least 30 to 40 people). The prosecutor responded that the only unendorsed res gestae witnesses known to him were the defendant's parents and that he would endorse them, if defense counsel wished. Relying principally on *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973), defendant now asserts that the people were under an affirmative obligation to discover the identity of the unendorsed witnesses and present them at trial.

Defendant's reliance on *Harrison, supra,* is clearly misplaced. In *Harrison, at the time of trial,* the prosecutor knew the identity of the five res gestae witnesses defense counsel wished to be endorsed.[1] The prosecutor's position on appeal was that he was under no obligation to endorse witnesses whose identity he had acquired after the filing of the information. This Court rejected that contention and held that the prosecutor may be obligated to endorse witnesses whose identity he learns after the information is filed but before the trial begins. In the present case, the prosecutor did not know the names of the res gestae witnesses, either at the time the information was filed or at the time of trial. Under these circumstances, *Harrison* is inapplicable and the general rule, that the

---

[1] As this Court noted in *Harrison, supra,* 585:

"In the case at bar, the record affirmatively discloses that the prosecutor was fully apprised concerning these witnesses by defense counsel's repeated and timely motions. At or before the time of trial, the prosecutor knew these witnesses existed."

prosecutor need not endorse res gestae witnesses whose identity is unknown to him, governs. *People v Loggins,* 17 Mich App 388; 169 NW2d 519 (1969).

Defendant's next contention, that the prosecutor's closing remarks were so prejudicial as to deny him a fair trial, is similarly without merit. Since we find that any alleged prejudice resulting from the remarks in question could have been vitiated by a curative instruction, defense counsel's failure to object is fatal to the present claim on appeal. *People v Tarpley,* 41 Mich App 227; 199 NW2d 839 (1972).

Defendant next alleges that the trial court's failure to examine the jury on voir dire, as requested, with respect to racial prejudice denied him his constitutional right to a trial by a fair and impartial jury and mandates reversal.

Prior to trial, defense counsel submitted 120 questions to be asked during voir dire. Although the trial court chose not to ask the specific questions propounded by defense counsel, he did cover the subject matter involved in those questions thoroughly. For example, the trial court asked the following questions during voir dire:

"Have any of you had any dealings or experiences with black persons that might make it difficult for you to sit in impartial judgment on this case? By 'you' I mean also members of your immediate family, your spouse, your children?

"(none)

*"The Court:* Will the fact that the defendant is black in anyway affect your judgment in this cause?

"(none)

*"The Court:* Would any of you give more credence to the testimony of a white person than you would give to the testimony of a black person, everything else being equal?

"(none)

"*The Court:* That is give two persons of equal stature and so forth upon the stand, equal appearance, and one is a white skin, one has a black skin, would that in anyway prejudice you in either way?

"(none)

"*The Court:* Would any of you give the police officers any more credence in their testimony than you would a person who is not a police officer, because of the fact that the witness was a police officer?"

The extent of allowable voir dire is largely a matter of judicial discretion as to manner and scope and the trial court is not required to conduct the voir dire in the precise language proposed by counsel. *People v Hoffmeister,* 52 Mich App 219; 217 NW2d 58 (1974). The trial court's voir dire was sufficient to afford defense counsel information necessary to challenge the prospective jurors, either peremptorily or for cause. Further, in light of the fact that defense counsel did not exhaust his peremptory challenges and expressed satisfaction with the jury at the end of the trial court's extensive voir dire, the defendant's position is without merit.

Next, defendant challenges the trial court's rulings with respect to a number of evidential questions.

During trial, defense counsel attempted to introduce testimony that, two nights before the incident in question, the defendant had been beaten by police officers. Counsel apparently did so in an effort to show that the defendant attempted to elude the police because he was frightened by the prospect of being beaten again. The trial court ruled the proffered testimony inadmissible.

Decisions with respect to the materiality and relevancy of proffered evidence are within the discretion of the trial court and our review of such

decisions is limited to a determination of whether the trial court abused that discretion in admitting or excluding the proffered testimonial or physical evidence. *People v Moore,* 51 Mich App 48; 214 NW2d 548 (1974); *People v Hodo,* 51 Mich App 628; 215 NW2d 733 (1974). Defendant claims that the excluded testimony was both material and relevant to the question of whether he "willfully" attempted to elude the police officers as is required by MCLA 750.479(a); MSA 28.747(1). We disagree.

Whatever may have been the defendant's motive for attempting to elude the police officers, both his own testimony and that of his companion clearly demonstrates that he did so voluntarily, consciously, and intentionally. The mere fact that he did, intentionally and knowingly, what the statute forbids is sufficient to warrant the finding that he acted willfully. *Detroit v Pillon,* 18 Mich App 373; 171 NW2d 484 (1969). Furthermore, defense counsel produced no evidence linking the police officers involved in the New Year's Eve incident with those who allegedly beat the defendant two nights before. In these circumstances we cannot say that the trial court abused its discretion in excluding the testimony.

Defense counsel also sought to introduce testimony that the police officer who was bitten by the defendant had been in a fight with a black male in the past, had filed a complaint of assaulting a police officer against that individual, and that the individual had been acquitted. The trial court sustained the prosecutor's objection to this testimony.

It would appear that defense counsel was attempting to impeach the credibility of the complaining officer by showing a bias against blacks. However, before a witness can be impeached by

calling other witnesses to prove acts or declarations showing bias, the witness under attack must first have been asked about these facts and cross-examined. McCormick, Evidence (2d ed), § 40, p 80. In the present case, the proper foundation was not laid and the trial court did not err in failing to admit the impeaching evidence. *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969).

During trial, the defendant's mother testified that she did not remember refusing to allow an emergency room doctor to take a sample of her son's blood to determine whether or not he was intoxicated. Over defense objection, the prosecutor called the emergency room doctor as a rebuttal witness; the doctor testified that, although Mrs. Harrell agreed to the blood test at first, she later refused and denied permission. Defendant now contends that the admission of the doctor's rebuttal testimony was reversible error.

Defendant properly cites *People v Durkee,* 369 Mich 618; 120 NW2d 729 (1963), and *People v Miller,* 49 Mich App 53; 211 NW2d 242 (1973), for the proposition that a witness who testifies that he does not remember the occurrence of a specific event may not be impeached by testimony that that event occurred. This is so, primarily because the witness's testimony does not concern itself with the occurrence or non-occurrence of the event, but only with whether or not the witness can recall it happening. Hence, testimony offered for impeachment to the effect that the event, in fact, did occur, does not discredit the witness's testimony that he cannot recall it. Under both *Durkee* and *Miller,* the trial courts' admission of the emergency room doctor's testimony with respect to the blood test was error; however, we find that error to be harmless. Whereas in *Durkee* and

*Miller* the impeachment testimony was material and directly related to the defendant's criminal liability, in the present case the doctor's testimony was on a collateral issue which had no relation to defendant's guilt or innocence of the crime charged. In light of that fact, we find that the trial court's error in admitting the testimony does not require or justify reversal of defendant's conviction.

Defendant's next contention, that the trial court injected disposition into the jury's deliberations by indicating that both charges were misdemeanors, is without merit, in light of this Court's recent decision in *People v Ritchie,* 52 Mich App 380; 217 NW2d 439 (1974).

Defendant also argues that the trial court erred in failing to give a limiting instruction to the effect that the emergency room doctor's testimony was only relevant to the credibility of defendant's mother.

Although counsel on appeal asserts that trial counsel requested the limiting instruction, the record indicates only that he expressed his intention, at the time the doctor was called on rebuttal, to request such an instruction at the conclusion of trial. No such request was ever made before the jury retired. In the absence of a proper request or objection, the trial court's failure to give the limiting instruction is not reversible error. *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1972).

Finally, relying on *Tate v Short,* 401 US 395; 91 S Ct 668; 28 L Ed 2d 130 (1971), defendant argues that the sentence imposed by the trial court violates the Fourteenth Amendment. Counsel's argument with respect to this issue is conclusory and without merit. Although it is claimed that defendant is an indigent, we note that he was repre-

sented by retained counsel throughout the bulk of these proceedings and posted an appeal bond of $1,000. Furthermore, counsel on appeal does not even contend that defendant served any time in jail as a result of the sentence imposed. *Tate, supra,* simply is not applicable in these circumstances.

Conviction affirmed.

All concurred.