PEOPLE v HARRELL

Docket No. 56582. Argued April 5, 1976 (Calendar No. 3).—Decided December 21, 1976. Rehearing denied 400 Mich 951.

Walter Harrell, Jr., was convicted by a jury in Jackson Circuit Court, Gordon W. Britten, J., of assaulting a police officer, and fleeing and eluding a police officer. The Court of Appeals, McGregor, P. J., and R. B. Burns and O'Hara, JJ., affirmed (Docket No. 13068). At trial defense counsel submitted to the court 120 questions to be asked of the veniremen on voir dire ostensibly directed to uncovering possible racial prejudice. The trial court limited the voir dire on this subject to seven specific questions. Defendant appeals. *Held:*

The scope of voir dire examination of prospective jurors is within the discretion of the trial judge and his decision will not be set aside absent abuse of discretion. The Fourteenth Amendment requires the trial judge to interrogate jurors on the subject of racial prejudice after the defendant's timely request where there is a significant likelihood that absent the interrogation the jury would not be impartial, but the judge need not ask every question dealing with racial prejudice that the defense might wish to be asked. Many of the 120 questions proposed by defense counsel were repetitive of the questions contained in the Juror Personal History Questionnaires and the questions the court asked and many were not proper for voir dire. The questions asked were sufficient to afford defense counsel information necessary to challenge prospective jurors, either peremptorily or for cause.

Affirmed..

Justice Levin, joined by the Chief Justice and Justice Williams, dissented. When there are special circumstances indicating the presence of racial overtones, as in this case, so that there is reason to believe that the jurors might be prejudiced for or against a litigant, the inquiry must extend beyond a mere empty and perfunctory exercise. The defendant was enti-

REFERENCES FOR POINTS IN HEADNOTES
[1–9] 47 Am Jur 2d, Jury § 200.
76 Am Jur 2d, Trial § 1072 *et seq.*
Right of counsel in criminal case personally to conduct the voir dire examination of prospective jurors. 73 ALR2d 1187.

tled to have the court put to the jurors individually questions tending to ferret out any subtle subjective bias entertained by a member of the panel, thereby providing a basis for intelligent exercise of both challenges for cause and peremptory challenges. The questions which were asked suggested the "correct" answers, and few prospective jurors would answer so as to show prejudice unless overtly prejudiced and proud of it. Such questions provide no insight into the latent prejudices of veniremen, prejudices which affect the juror's perceptions and perspectives but which even the juror may not realize exist. When searching questions are necessary, they should be separately addressed to each juror to avoid the sense of insulation from individual responsibility that group response seems to provide.

54 Mich App 554; 221 NW2d 411 (1974) affirmed.

OPINION OF THE COURT

1. CRIMINAL LAW—JURY—VOIR DIRE—TRIAL.

Examination of prospective jurors may be conducted by the court or, in its discretion, by counsel; the scope of voir dire examination of jurors is within the discretion of the trial judge and will not be set aside absent an abuse of discretion.

2. CRIMINAL LAW—JURY—VOIR DIRE—RACIAL PREJUDICE.

The Fourteenth Amendment requires a judge to interrogate jurors in a criminal case on the subject of racial prejudice after a defendant's timely request where there is a significant likelihood that absent the questioning the jury would not be impartial, but the judge need not ask every question dealing with racial prejudice that the defendant requests.

3. CRIMINAL LAW—JURY—VOIR DIRE—RACIAL PREJUDICE.

A trial court's voir dire of prospective jurors in a trial of a black defendant for assaulting and fleeing white police officers contained sufficient questions regarding racial prejudice to afford defense counsel information necessary to challenge prospective jurors where the court used 7 of 120 questions proposed by defense counsel, many of the other questions were repetitive of the ones used in the Juror Personal History Questionnaires, and many were not proper for voir dire.

DISSENTING OPINION

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

4. CRIMINAL LAW—JURY—VOIR DIRE—RACIAL PREJUDICE.

*Refusal to ask probing questions to enable a litigant to exercise intelligently his rights of challenge on voir dire examination is*

an abuse of the judge's discretion where there are significant racial overtones in the case.

5. CRIMINAL LAW—JURY—VOIR DIRE—RACIAL PREJUDICE—CONSTITUTIONAL LAW.

   *Voir dire questioning directed to racial prejudice is not constitutionally required by the Fourteenth Amendment; however, the states are free to allow or require questions not demanded by the Federal Constitution, and the wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant (US Const, Am XIV).*

6. CRIMINAL LAW—TRIAL—JURY—VOIR DIRE.

   *Examination of prospective jurors, if done by the judge, should put all reasonable questions suggested by counsel; although the scope of voir dire is largely in the discretion of the trial court and should be kept within reasonable bounds, it should be broad enough to enable the attorneys to ascertain certain information as will permit them to develop a basis for challenging the jurors for cause as well as for exercising the right to peremptory challenges.*

7. CONSTITUTIONAL LAW—JURY—VOIR DIRE.

   *A litigant's right to trial before an impartial jury requires that he be given an opportunity to obtain the information necessary to challenge prospective jurors for cause or peremptorily (Const 1963, art 1, § 14).*

8. CRIMINAL LAW—JURY—VOIR DIRE—RACIAL PREJUDICE.

   *Conclusory questions on voir dire of prospective jurors which suggest the answers do not furnish any basis for the often intuitive exercise of the right of peremptory challenge; questions are inadequate unless they tend to reveal latent prejudices which the juror may not easily acknowledge to himself or others that may influence his deliberations and decision.*

9. CRIMINAL LAW—JURY—VOIR DIRE—RACIAL PREJUDICE.

   *A black defendant is entitled to have the court put to prospective jurors individually questions tending to ferret out any subjective bias entertained by a member of the panel where the defendant was arrested on the doorstep of his home following a police chase, and at the time of arrest and at the trial the matter had polarized into a confrontation between whites (the police officers) and blacks (the defendant, his family and other witnesses); the special circumstances of the case indicate the presence of racial overtones and the inquiry must extend beyond a mere empty and perfunctory exercise, although the*

*court is not obliged to ask all the questions propounded by defense counsel nor to ask them in the exact form in which they were submitted.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Marshall S. Redman)* for defendant.

COLEMAN, J. Defendant was convicted by a jury of assulting a police officer, MCLA 750.479; MSA 28.747, and fleeing and eluding a police officer, MCLA 750.479a; MSA 28.747(1). On December 23, 1971, defendant was sentenced to 6 months in jail and $150 costs, or an additional 30 days in jail on one count, and a suspended sentence of $100 fine and $100 costs on the other count.

The Court of Appeals affirmed the conviction.[1] This Court granted leave to appeal limited to the two questions considered herein.[2]

Defendant is a young black man and most of the police officers involved in the incident are white. Prior to trial, defense counsel submitted 120 questions to be asked during voir dire. In lieu of the defendant's 120 questions, the trial judge announced that he would utilize seven of the defendant's questions to cover any bias or racial prejudice in the proposed jurors.

ISSUES

1. Did the trial court's refusal to submit 120 questions to the jury on voir dire deny defendant a

[1] 54 Mich App 554; 221 NW2d 411 (1974).
[2] 394 Mich 812 (1975).

trial by a fair and impartial jury by preventing a meaningful exercise of challenges for cause?

2. Did the trial court's refusal to submit 120 questions to the jury on voir dire deny defendant a trial by a fair and impartial jury by preventing the intelligent use of peremptory challenges?

## Discussion

In Michigan, the examination of prospective jurors may be conducted by the court or, in its discretion, by the attorneys.[3] The scope of voir dire examination of jurors is within the discretion of the trial judge and his decision will not be set aside absent an abuse of that discretion.[4] Voir dire affords attorneys an opportunity to elicit sufficient information to develop a rational basis for excluding veniremen whether for cause or by peremptory challenges.[5]

Relying on *Ham v South Carolina,* 409 US 524; 93 S Ct 848; 35 L Ed 2d 46 (1973), and related Federal appellate decisions, the defendant maintains he had a constitutional right to voir dire the veniremen further on racial prejudice. Although it is true that the *Ham* decision held that the Fourteenth Amendment required the trial judge to interrogate jurors upon the subject of racial prejudice after the defendant's timely request, *Ham* does not stand for the proposition that the trial judge must ask every question dealing with racial prejudice that the defense might wish to be heard.

Justice Rehnquist, writing for the Court, stated:

---

[3] GCR 1963, 511.3.

[4] *Corbin v Hittle,* 34 Mich App 631; 192 NW2d 38 (1971); *People v Brown,* 46 Mich App 592; 208 NW2d 590 (1973).

[5] 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 465.

"We agree with the dissenting justices of the Supreme Court of South Carolina that the trial judge was not required to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner. The Court in *Aldridge* was at pains to point out, in a context where its authority within the federal system of courts allows a good deal closer supervision than does the Fourteenth Amendment, that the trial court 'had a broad discretion as to the questions to be asked,' 283 US, at 310; 51 S Ct, at 471 [75 L Ed 1054 (1931)]. The discretion as to form and number of questions permitted by the Due Process Clause of the Fourteenth Amendment is at least as broad. In this context, either of the brief, general questions urged by the petitioner would appear sufficient to focus the attention of prospective jurors on any racial prejudice they might entertain." 409 US 527.

While concurring in part and dissenting in part with the majority's decision in *Ham,* Justice Marshall stated:

"I do not mean to suggest that a defendant must be permitted to propound any question or that limitless time must be devoted to preliminary *voir dire.* Although the defendant's interest in a jury free of prejudice is strong, there are countervailing state interests in the expeditious conduct of criminal trials and the avoidance of jury intimidation. These interests bulk larger as the possibility of uncovering prejudice becomes more attenuated. The trial judge has broad discretion to refuse to ask questions that are irrelevant or vexatious. Thus, where the claimed prejudice is of a novel character, the judge might require a preliminary showing of relevance or of possible prejudice before allowing the questions." 409 US 533.

Footnote 2 at 409 US 533 specifically holds:

"I also agree with the majority that the judge may

properly decline to ask the question in any particular form or ask any particular number of questions on a subject."

In its most recent pronouncement in this area, the Supreme Court of the United States, by Justice Powell, held that voir dire about racial prejudice is not constitutionally required absent circumstances comparable in significance to those existing in *Ham, supra. Ristaino v Ross,* 424 US 589; 96 S Ct 1017; 47 L Ed 2d 258 (1976). Defendant Ross was a black man who was charged with two other blacks for the armed robbery, assault and battery by means of a dangerous weapon, and assault and battery with intent to murder of a white man employed by Boston University as a security guard. The trial judge refused to pose a question directly related to racial prejudice during the voir dire of the veniremen.

The Court's opinion said *Ham* "reflected an assessment of whether under all of the circumstances presented there was a constitutionally significant likelihood that, absent questioning about racial prejudice", the jury would not be impartial:

"The circumstances in Ham strongly suggested the need for *voir dire* to include specific questioning about racial prejudice. Ham's defense was that he had been framed because of his civil rights activities. His prominence in the community as a civil rights activist, if not already known to veniremen, inevitably would have been revealed to the members of the jury in the course of his presentation of that defense. Racial issues therefore were inextricably bound up with the conduct of the trial. Further, Ham's reputation as a civil rights activist and the defense he interposed were likely to intensify any prejudice that individual members of the jury might harbor. In such circumstances we deemed a *voir dire* that included questioning specifically directed to

racial prejudice, when sought by Ham, necessary to meet the constitutional requirement that an impartial jury be impaneled."

Unlike *Ham,* "the need to question veniremen specifically about racial prejudice" did not rise "to constitutional dimensions" in *Ristaino.*

Although the questions were not constitutionally required in *Ristaino,* footnote 9 of the opinion said "the wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant". The states "are free to allow or require questions not demanded by the Constitution".

In the instant case, the following colloquy took place between defense counsel and the trial judge in chambers:

"*Mr. Hayes:* Could you indicate to me which ones you are going to use?

"*The Court:* 25, 26 and 27, 91 and 92, 105 and 106 with additions making them to conform to the Court rulings.

"*Mr. Hayes:* May I ask—why you have rejected all the questions which I believe go to the essence of the matter, Your Honor?

"*The Court:* The court will give the voir dire. I think the court's voir dire will cover any bias or prejudice any jurors may have—that is the purpose of it—it is not to choose a jury which is biased or *[sic]* your viewpoint or the prosecution's, but to get a jury which is unbiased and unprejudiced, and I think the court's voir dire will fairly cover it. Knowledge of your instructions are *[sic]* contained in the court questionnaire signed by the jurors, and it would be repetitious to go into them— many of them are of the nature not proper for voir dire. These are not given."

During the voir dire, the trial court asked the following questions:

"Have any of you had any dealings or experiences with black persons that might make it difficult for you to sit in impartial judgment on this case? By 'you' I mean also members of your immediate family, your spouse, your children?

*"(none)*

*"The Court:* Will the fact that defendant is black in any way affect your judgment in this cause?

*"(none)*

*"The Court:* Would any of you give more credence to the testimony of a white person than you would give to the testimony of a black person, everything else being equal?

*"(none)*

*"The Court:* That is give two persons of equal stature and so forth upon the stand, equal appearance, and one is a white skin, one has a black skin, would that in any way prejudice you in either way? '

*"(none)*

*"The Court:* Would any of you give the police officers any more credence in their testimony than you would a person who is not a police officer, because of the fact that the witness was a police officer?

*"(none)."*

Our examination of the 120 questions proposed by counsel discloses that many are repetitive of the court questionnaire[6] and many are not proper for voir dire.[7]

---

[6] GCR 1963, 510.

[7] Many of defendant's proposed questions are irrelevant, vague or inconsequential *(e.g.):*

"61. Did you ever take the position 'where there is smoke there must be some fire someplace'?

"62. Have you ever watched the Perry Mason show?

\* \* \*

"67. Have you ever made a statement to anyone that Negroes should be able to help themselves just like anybody else does?

\* \* \*

"70. Do you think there is any difference between black people and white people?"

In the instant case, the trial court followed the course of action recommended by the United States Supreme Court in *Ristaino, supra.* We find no abuse of the trial court's discretion. The trial court's voir dire contained questions regarding racial prejudice which were sufficient to afford defense counsel information necessary to challenge prospective jurors, either peremptorily[8] or for cause. Defendant's right to be tried by an impartial jury was protected by the judge's questioning.

The defendant's conviction is affirmed.

FITZGERALD, LINDEMER, and RYAN, JJ., concurred with COLEMAN, J.

LEVIN, J. *(dissenting).* We all agree that the purpose of voir dire, as expressed in the prevailing opinion, is to provide counsel "an opportunity to elicit sufficient information to develop a rational basis for excluding veniremen whether for cause or by peremptory challenge".

Our disagreement concerns the sufficiency of the questions used by the judge and whether he so limited the extent and content of questions that Harrell was deprived of his rights under the Michigan Constitution to a fair trial[1] by an impartial jury.[2]

Harrell was convicted by a jury of assaulting[3]

[8] The defendant was allowed five peremptory challenges in the instant case. GCR 1963, 511.5; MCLA 768.12; MSA 28.1035. However, the defense counsel utilized only four of his peremptory challenges and expressed his satisfaction with the panel at the close of the voir dire.

[1] "No person shall * * * be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17.

[2] "In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury * * * ." Const 1963, art 1, § 20.

[3] MCLA 750.479; MSA 28.747.

and fleeing and eluding[4] a police officer. The Court of Appeals affirmed.[5]

Harrell and all his witnesses were black. All the police officers giving testimony favorable to the prosecution were white.

Before the trial, Harrell's counsel submitted 120 *voir dire* questions, many designed to reveal latent racial bias or prejudice of the prospective jurors. The judge asked a number of the general questions on race, omitting the more probing questions.

We would hold that where there are significant racial overtones, probing questions are necessary to enable a litigant to exercise intelligently his rights of challenge, and that the refusal to ask such questions is an abuse of the judge's discretion to control the *voir dire* examination.

I

Two police officers attempted to stop Harrell for drunk driving. Following a ten-block chase, he parked his car and ran down the street to the back of his parents' home. He was apprehended at the door and advised that he was under arrest for fleeing and eluding a police officer. A large crowd gathered.

The prosecution called seven police officers as *res gestae* witnesses, six white and one black. The six white officers gave testimony favorable to the prosecution indicating that Harrell and the crowd were struggling with the police, and that the officers did not strike Harrell. The black officer testified that he saw officers dragging Harrell, limp and unconscious, to the street and then strike him several times.

---

[4] MCLA 750.479a; MSA 28.747(1).

[5] *People v Harrell,* 54 Mich App 554; 221 NW2d 411 (1974).

Harrell's witnesses, some of them relatives, testified that he did not strike the officers, that the officers struck him, and that the crowd did not harrass the officers.

Before the *voir dire,* Harrell's counsel asserted that the case involved a "black-white confrontation" in an emotionally charged atmosphere and that the alignment of witnesses along racial lines evidenced significant racial overtones which would be operative throughout the trial. He submitted the 120 *voir dire* questions, many exploring for racial bias. Counsel argued that an extensive and probing *voir dire* was necessary to provide a sufficient basis for intelligent exercise of the right to challenge prospective jurors.[6]

Among the questions submitted,[7] but not asked, were the following:

"Have you ever made a statement to anyone that Negroes should be able to help themselves just like anybody else does?"

"Do you think that the black people of Jackson County have a legitimate complaint when they accuse the white society of white racism?"

"Do you think there is any difference between black people and white people?"

"Are you aware of any racial friction in the Jackson community? How do you explain it? Whose fault do you think it is?"

"Do you believe that a person has a right to discrimi-

---

[6] Counsel's subsequent failure to exercise all Harrell's peremptory challenges does not waive his right to raise this issue on appeal. *Cf. People v Stockard,* 391 Mich 481; 219 NW2d 68 (1974). To say to a litigant who unsuccessfully sought more extensive *voir dire* than was allowed that his failure to exercise fully his peremptory challenges waives his right to object would be to ignore his claim that because of limitations on questioning he did not have adequate information intelligently to exercise this right.

[7] The questions quoted in the accompanying text are the ones stressed in Harrell's brief in this Court.

nate in selling or renting his house because of race, color, or creed?"

"Have you or your family ever moved out of a neighborhood because black people were moving in?"

"Do you believe that black claims of police brutality are unwarranted or exaggerated?"

"Do you feel black people by and large have had the same opportunity as whites?"

"Do you equate shabbiness with black people?"

The judge limited the questions concerning racial bias to the following:

"Have any of you had any dealings or experience with black persons that might make it difficult for you to sit in impartial judgment on this case? By 'you' I mean also members of your immediate family, your spouse, your children?"

"Will the fact that the defendant is black in any way affect your judgment in this cause?"

"Would any of you give more credence to the testimony of a white person than you would give to the testimony of a black person, everything else being equal?"

"That is given two persons of equal stature and so forth upon the stand, equal appearance, and one is a white skin, one has a black skin, would that in any way prejudice you in either way?"

## II

The pronouncements of the United States Supreme Court in *Ham v South Carolina,* 409 US 524; 93 S Ct 848; 35 L Ed 2d 46 (1973), and *Ristaino v Ross,* 424 US 589; 96 S Ct 1017; 47 L Ed 2d 258 (1976), concern questions only tangentially related to the issue before this Court.[8]

[8] Both cases are discussed in a Note, *Criminal Procedure—Voir Dire —The Right to Question Jurors on Racial Prejudice,* 37 Ohio St L J 412 (1976).

*Ham* was a state court prosecution for possession of marijuana. The defendant was a young, bearded black, without a prior conviction record, known locally as a civil rights activist. He claimed "that law enforcement officers were 'out to get him' because of his civil rights activities, and that he had been framed on the drug charge".[9] The Court held that the trial judge erred in refusing to ask any questions concerning racial prejudice.

*Ristaino* was a collateral attack in the federal courts on a state court conviction. In line with another decision during the same term cutting back Federal *habeas corpus* review of state court convictions,[10] the Court eschewed expansion of the role of the United States district courts and courts of appeal in supervising state court criminal proceedings; a racial difference between the defendant and the victim will not alone support resort to the federal courts on *voir dire* issues.[11]

The Court, in *Ristaino,* said that although *"voir dire* questioning directed to racial prejudice was

---

[9] The Court declared, "The State having created this statutory framework [*voir dire* examination] for the selection of juries, the essential fairness required by the Due Process Clause of the Fourteenth Amendment requires under the facts shown by this record the petitioner be permitted to have the jurors interrogated on the issue of racial bias." *Ham v South Carolina,* 409 US 524, 527; 93 S Ct 848; 35 L Ed 2d 46 (1973).

[10] *Stone v Powell,* 428 US 465; 96 S Ct 3037; 49 L Ed 2d 1067 (1976).

[11] Ross had been convicted of crimes of violence against a white security guard. The Court held that his federal constitutional rights secured through the Fourteenth Amendment were not violated by a refusal to ask questions directed to racial prejudice. "The mere fact that the victim of the crimes alleged was a white man and the defendants were Negroes was less likely to distort the trial than were the special factors involved in *Ham"* where racial issues "were inextricably bound up with the conduct of the trial". *Ristaino v Ross,* 424 US 589, 597; 96 S Ct 1017; 47 L Ed 2d 258, (1976).

The Court acknowledged that "[a] criminal defendant in a state court is guaranteed an 'impartial jury' by the Sixth Amendment as applicable to the States through the Fourteenth Amendment" and that "[p]rinciples of due process also guarantee a defendant an impartial jury." *Ristaino v Ross, supra,* p 595, fn 6.

not constitutionally required [by the Fourteenth Amendment], the wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant. Under our supervisory power we *would have required* as much of a federal court faced with the circumstances here. See *Aldridge v United States* [283 US 308, 313; 51 S Ct 470; 75 L Ed 1054 (1931)] * * * . The States also are free to allow or require questions not demanded by the Constitution." *Ristaino v Ross, supra,* p 597, fn 9. (Emphasis supplied.)

### III

In *Aldridge,* as in *Ristaino,* the defendant was black and the victim was white. The Court held that Aldridge was entitled to have the veniremen interrogated concerning racial prejudice; reviewing state decisions, the Court concluded that the "propriety of such an inquiry has been generally recognized".

Aldridge had been convicted in the District of Columbia. The Court rejected the argument that such inquiry was unnecessary because of privileges and rights enjoyed by blacks in that jurisdiction:

"But the question is not as to the civil privileges of the negro, or as to the dominant sentiment of the community and the general absence of any disqualifying prejudice, but as to the bias of the particular jurors who are to try the accused. * * * [I]f any one of them was shown to entertain a prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit." *Aldridge v United States, supra,* p 314.

The authorities are in general agreement that where racial prejudice may affect a juror's attitude

the trial judge must permit *voir dire* inquiry concerning racial prejudice.[12]

There is no disagreement in the opinions filed today concerning Harrell's right to inquire concerning racial prejudice.[13]

## IV

The issue here concerns the kinds of questions that may be asked and the extent of the judge's discretion to limit the inquiry, and not whether the judge or counsel conducts the examination. To conserve time and to avoid questions slanted to predispose prospective jurors to a particular result, the judge may restructure questions submitted by counsel and refuse to permit counsel to put the questions directly.[14]

---

[12] *See* 47 Am Jur 2d, Jury, § 284, p 859.

Similarly, *see* Anno, *Racial, religious, economic, social, or political prejudice of proposed juror as proper subject of inquiry or ground of challenge on voir dire in criminal case,* 54 ALR2d 1204; Anno, *Racial, religious, economic, social or political prejudice of proposed juror as proper subject of inquiry or ground of challenge on voir dire in civil case,* 72 ALR 2d 905.

In federal prosecutions following *Aldridge v United States,* 283 US 308; 51 S Ct 470; 75 L Ed 1054 (1931), the trial judge has been required, where requested, to inquire regarding racial prejudice where the defendant is black. *United States v Robinson,* 466 F2d 780 (CA 7, 1972); *United States v Johnson,* 527 F2d 1104 (CA 4, 1975); *United States v Robinson,* 485 F2d 1157 (CA 3, 1973); *United States v Carter,* 440 F2d 1132 (CA 6, 1971).

[13] In rejecting the argument that "it would be detrimental to the administration of the law * * * to allow questions to jurors as to racial or religious prejudices", the United States Supreme Court said, in *Aldridge, supra,* p 315, "[w]e think that it would be far more injurious to permit it to be thought. that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute".

[14] "The court may permit the attorneys to conduct the examination of prospective jurors or may itself conduct the examination." GCR 1963, 511.3.

"Where circumstances warrant lengthy examination of the jurors, the court's discretion is more likely to be exercised in favor of

It has been observed, however, that while examination of prospective jurors by the judge "tends to expedite jury trials and eliminate much of the old tedious examination of jurors which was often subtly framed to bring in matters of sympathy or prejudice [, i]f the court is to do the examining, *it should put all reasonable questions suggested by counsel*".[15] Although the scope of voir dire "is largely in the discretion of the trial court and should be kept within reasonable bounds", it should be *"broad enough* to enable the attorneys to ascertain certain information as will permit them to develop a basis for challenging the jurors for cause as well as for exercising the right to peremptory challenges".[16]

A litigant's right to have counsel develop information necessary to provide a basis for exercise of challenges was expressed by this Court after the 1963 revision of the court rules:

"A litigant's right to trial before an impartial jury (Const 1963, art 1, § 14) requires that he be given an opportunity to obtain the information necessary to challenge such individuals for cause or peremptorily." *Bunda v Hardwick,* 376 Mich 640, 659; 138 NW2d 305 (1965).[17]

Earlier expressions by this Court are in accord.[18]

---

permitting the examination of the jurors to be conducted by the attorneys." 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Comments, p 465.

[15] 6 Callaghan's Michigan Pleading & Practice (2d ed), § 38.29, p 44 (emphasis supplied).

[16] 2 Honigman & Hawkins, *supra,* p 465 (emphasis supplied).

[17] While this language appears in a dissenting opinion signed by three justices, four other justices, in two separate opinions, stated that they "agree" and "concur in all" of the dissenting opinion except a portion concerning another issue. *See Bunda v Hardwick,* 376 Mich 640, 673–674 (1965).

[18] "It is indispensable to a fair trial that a litigant be given a reasonable opportunity to ascertain on the *voir dire* whether any of

Questions which are conclusory and suggest the "correct" answer may fail to provide the "information necessary" for exercise of the rights of challenge. A searching and probing inquiry is often

the jurors summoned are subject to being challenged for cause or even peremptorily. In a large measure the scope of examination of jurors on *voir dire* is within the discretion of the trial judge; *but it must not be so limited as to exclude a showing of facts that would constitute ground for challenging for cause or the reasonable exercise of peremptory challenges.* So to limit the examination is an abuse of discretion." *Fedorinchik v Stewart,* 289 Mich 436, 438–439; 286 NW 673 (1939) (emphasis supplied).

"[I]t is important to the rights of parties that they may be permitted inquiries which may be the means of discovering facts which will justify the exclusion of a juror. The success of a challenge depends upon eliciting such information from the juror himself, as well as from other sources, as to his state or condition of mind, as will enable a judgment to be formed by the court as to his competency. * * * A party has a right to a certain number of peremptory challenges, and in order to exercise this right understandingly it is proper for him to ascertain as nearly as practicable the disposition of the juror toward him, and toward the subject-matter in controversy; and *any inquiry within reasonable limits which tends to bring to light any bias or prejudice entertained by a juror is proper." Monaghan v The Agricultural Fire Insurance Co,* 53 Mich 238, 246; 18 NW 797 (1884) (emphasis supplied).

"It is important to both the prosecution and the defendant that a fair jury be obtained, one made up of men who had not prejudged the case, who had not made up their minds. To secure this end *there must be some latitude permitted in the examination of prospective jurors." People v Fritch,* 210 Mich 343, 345; 178 NW 59 (1920) (emphasis supplied).

*See Towl v Bradley,* 108 Mich 409, 410; 66 NW 347 (1896), where the Court declared that "[t]he defendant had a right to question the jurors upon the subject of their prejudices against the defense of the statute of limitations, as a means of determining whether or not to exercise the right of peremptory challenge".

"While a trial judge has wide latitude concerning the scope of juror examination and need not ask the exact question posed by a party, parties are entitled to reveal substantial prejudices which veniremen may possess and have *the right to develop a rational basis for the exclusion of prospective jurors." People v Milkovich,* 31 Mich App 582, 585; 188 NW2d 124 (1971) (emphasis supplied).

"A *fair range of latitude* in examining jurors or in putting questions to jurors at the suggestion of counsel, must be allowed under the constitutional guaranty of jury-trial and common-law principles governing the right of trial by jury." 6 Callaghan, *supra,* § 38.29, p 44 (emphasis supplied).

See also *Donaldson v MacDonald-Blazo Associates, Inc,* 34 Mich App 50, 53–54; 190 NW2d 705 (1971).

necessary to develop a reliable basis for meaningful exercise of these rights. Absent an opportunity for reasonable inquiry and the development of reliable information, the purpose and function of *voir dire* is reduced to an empty exercise which may succeed in little more than observance of appearances, consuming time with virtually no benefit to the litigants.

Unless counsel are allowed adequate *voir dire* examination, the state or a wealthy litigant may enjoy an overwhelming advantage due to superior resources for pretrial investigation of the panel.[19]

The purpose of *voir dire* is to disclose not only conscious prejudice but also "unconscious prejudice against a defendant because of his race or color".[20]

The questions asked—have you had any experiences with blacks affecting the "impartiality" of your judgment, would you give "more credence" to the testimony of a white person, would you in any way be "prejudiced" by the color of a person's skin, "will the fact that the defendant is black in any way affect your judgment"—amounted to little more than "Are you prejudiced against blacks?" Few prospective jurors would answer affirmatively unless overtly prejudiced and proud of it. "Natural human pride would suggest a negative answer to whether there was a reason the juror could not be fair and impartial." *United States v Dellinger,* 472 F2d 340, 375 (CA 7, 1972).

Questions such as: "Are you prejudiced against blacks?" or, "Will the fact that the defendant is black in any way affect your judgment in this cause?" suggest the response which a prospective

---

[19] *See* Babcock, *Voir Dire: Preserving "Its Wonderful Power,"* 27 Stanford L Rev 545 (1975). Similarly *see* Note, *Voir Dire: Establishing Minimum Standards to Facilitate the Exercise of Peremptory Challenges,* 27 Stanford L Rev 1493 (1975).

[20] *United States v Carter, supra,* p 1135.

juror should give. They facilitate the juror giving the "correct" answer without regard to whether it is the whole truth. Since few jurors will readily admit to harboring an attitude which is socially unacceptable and judicially frowned upon, such questions are worthless unless the prospective juror is an outspoken racist.

Conclusory questions which suggest the answers do not furnish any basis for the often intuitive exercise of the right of peremptory challenge.[21] They provide no insight into the latent prejudices of veniremen, prejudices which affect the jurors' perceptions and perspectives but which even the juror may not realize exist. More subtle and pervasive questioning is required before such subjective biases can be ascertained.

Questions are inadequate unless they tend to reveal latent prejudices which the juror may not easily acknowledge to himself or others that may influence the deliberations and decision.

---

[21] *See Monaghan v The Agricultural Fire Insurance Co, supra; Towl v Bradley, supra; Fedorinchik v Stewart, supra; Bunda v Hardwick, supra.*

"The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' upon a juror's 'habits and associations,' or upon the feeling that 'the bare questioning [a juror's] indifference may sometimes provoke a resentment.' It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the *voir dire,* by both prosecutor and accused. This Court has held that the fairness of trial by jury requires no less." *Swain v Alabama,* 380 US 202, 220–221; 85 S Ct 824; 13 L Ed 2d 759 (1965) (citations omitted).

When searching questions are necessary, they should be separately addressed to each juror to avoid the sense of insulation from individual responsibility that group response seems to provide.

## V

The United States Court of Appeals for the Seventh Circuit, recognizing trial judge discretion to control the extent of inquiry and the need to prevent repetitive questioning, underscored the right of a litigant to probe below the surface for attitudes which would provide a basis of challenge for cause or peremptorily, and declared:[22]

"Prejudice and bias are deep running streams more often than not concealed by the calm surface stemming from an awareness of societal distaste for their existence. Extended and trial-delaying interrogation may not pierce the veil, yet a few specific associational questions as a maieutic process may indicate the dormant seeds of prejudice, preconceived and unalterable concepts or other non-fairness disqualifications. The result may not reach the stage of being a basis for cause challenge but could well, because of an abundance of counsel caution, bring about a peremptory challenge which an omniscient eye would have known should have been exercised." *United States v Lewin,* 467 F2d 1132, 1137 (CA 7, 1972).[23]

---

[22] The court reversed a conviction for conspiracy to pay persons for registering to vote, on the ground that the judge had failed to question prospective jurors concerning contributions to or employment by the Better Government Association or the Chicago Daily News. The anticipated chief prosecution witnesses were in their employ.

[23] "We are told that the British courts quickly secure their juries, and criticism is directed at time-consuming trials within trials in this country when prospective members of the jury may wonder, as their lives are being probed, who is being tried. We think the criticism of too extended voir dire is justified but we are not ready to say that the person who has his liberty or, indeed, his property, at stake must be compelled to accept a jury on a strictly cursory, generality interrogation basis.

"At some happy mesne point, there must be permitted sufficient

The convictions of the "Chicago Seven" were reversed, by the Seventh Circuit, in part because of failure to permit *voir dire* examination of prospective jurors concerning their attitudes toward protests against involvement in the war in Viet Nam, the youth culture, relations with law enforcement officers and their exposure to pre-trial publicity. The Court declared that the defendants were entitled to broad ranging examination to facilitate not only exercise of the right to challenge for cause but also exercise of peremptory challenges. The Court said that a general question to the entire panel whether they could be fair and impartial could not be relied on "to produce a disclosure of any disqualifying state of mind. We do not believe that a prospective juror is so alert to his own prejudices. Thus it is essential to explore the backgrounds and attitudes of the jurors to some extent in order to discover actual bias, or cause"; "[i]f this right is not to be an empty one,

questioning to produce, in the light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right of challenge.

*    *    *

"We do not deem 'as it deems proper' [F R Crim P 24(a)] to give a trial judge unlimited discretion to ignore proposed questions nor to permit arbitrary refusal to put such questions.

"We do not consider the court's obligation to let counsel, on request, get at underlying bases reflecting on bias, prejudice or other suspect factors to be discharged by general questions such as, 'Is there any reason you cannot fairly and impartially try this case?' This obligation particularly would not seem to be discharged by general direct confrontation questions on human characteristics that most people are reluctant to admit they possess.

"On the other hand, we do not mean to suggest that the same matter may be explored in numerous substantially similar questions, with tedious repetitions, of only slightly variant shadings of meaning. No hard and fast rules can be laid down, but the trial court within the general guidelines hereinbefore set forth must exercise its discretion so as not to block the reasonable exploration of germane factors that might expose a basis for challenge, whether for cause or peremptory." *United States v Lewin,* 467 F2d 1132, 1137–1138 (CA 7, 1972).

the defendants must, upon request, be permitted sufficient inquiry into the background and attitudes of the jurors to enable them to exercise intelligently their peremptory challenges". *United States v Dellinger,* 472 F2d 340, 367, 368 (CA 7, 1972).

In a factual situation paralleling the instant case,[24] the Supreme Court of Arkansas held that it was an abuse of discretion to confine the questions to: "Would the fact that the defendants are members of the black race and that the officer is a member of the white race tend to influence your verdict or tend to prejudice you either for or against the defendants in this case?"

The court declared that *voir dire* examination "should not be limited to only that which might disqualify because such an inquiry also serves the purpose of determining whether counsel should exercise a peremptory challenge. * * * '[C]ounsel decides whether to use a peremptory challenge not so much on what a venireman may say, but on how he says it.'" *Cochran v State,* 256 Ark 99, 101; 505 SW2d 520, 521 (1974):

" ' * * * All trial lawyers, and all students of the science of jurisprudence, know that *general* questions directed to the jury panel, or to individual jurors, by a judge who at the beginning of the trial has no special information regarding the issues, or the relationship of the parties, or the attending circumstances, sometimes fail to elicit answers which may cause even the most conscientious juror to reveal an existing prejudicial status.' "[25] (Emphasis by the Court.)

---

[24] A white police officer was struck and injured in the performance of his duties when investigating a disturbance in a black neighborhood.

[25] *Cochran v Arkansas,* 256 Ark 99; 505 SW2d 520 (1974), quoting *Missouri Pacific Transportation Co v Johnson,* 197 Ark 1129; 126 SW2d 931 (1939).

The United States Court of Appeals for the Eighth Circuit reversed the conviction of an American Indian prosecuted for larceny in connection with the killing of a calf on an Indian reservation because the trial judge had unduly restricted the *voir dire* examination. The trial took place in October, 1973, following the well-publicized Wounded Knee events which had taken place in the spring of 1973 in the same general locality; "feelings of the local citizenry ran high". The court concluded that, "under these circumstances there existed a sincere concern over prejudicial issues and that a general rhetorical question asking if the jurors would be fair and unbiased toward the defendant was of questionable sufficiency". The judge had asked the jurors whether they were prejudiced "either way concerning American Indians to such an extent that these gentlemen could not get a fair and impartial trial before you". He refused to ask probing questions designed to determine the veniremen's attitude regarding Indians.[26] The Eighth Circuit said:

"Unquestionably one of the most effective means of ensuring impartiality is the voir dire proceeding during which questioning will expose any latent bias entertained by prospective jurors. Such exposure is necessary if the parties are to be expected to exercise their challenges in an intelligent and informed manner.

\* \* \*

[26] "Do you accept the idea that customs, actions and needs of those persons raised and living in an Indian culture can be different from the customs, actions and needs of those persons raised in a white culture?" "Do you accept the idea that these customs, actions and needs of those persons raised and living in an Indian culture are just as valid as those customs, actions and needs of persons raised in a white culture?" "Would any of you jurors have difficulty in accepting the idea that Indians have a right to and do hunt wildlife such as deer or rabbits on the reservation \* \* \* ?" *United States v Bear Runner,* 502 F2d 908, 910 (CA 8, 1974).

"In the instant case, the court's single question concerning racial bias was not only general in scope but was made to the prospective veniremen as a group. The effect was more like a monologue by the court than a probing examination of the jurors. Although the use of general questions has been approved by this court [citations omitted], the better practice in a sensitive case is to direct probing questions touching areas of possible prejudice to each individual juror, with the questions to be asked by the trial judge or counsel. Individual questioning is particularly necessary when the overall circumstances and surroundings suggest the possibility of racial bias." *United States v Bear Runner,* 502 F2d 908, 911–912 (CA 8, 1974).

In the instant case, as in *Cochran* and *Bear Runner,* there are special circumstances indicating the presence of racial overtones. The defendant was arrested on the doorstep of his home following a police chase. A crowd gathered. Both at the time of the arrest and at the trial the matter polarized into a confrontation between whites (the police officers) and blacks (defendant, his family and other witnesses).

In most cases there will be no reason to believe that the jurors might be prejudiced for or against a litigant. Where, however, there are such special circumstances, the inquiry must extend beyond a mere empty and perfunctory exercise.

The court was not obliged to ask all the questions propounded by Harrell's counsel nor to ask them in the exact form in which they were submitted. Harrell was, however, entitled to have the court put to the jurors individually questions tending to ferret out any subtle subjective bias entertained by a member of the panel, thereby providing a basis for intelligent exercise of both for-cause and peremptory challenges.

The historic right to an impartial jury and a fair

trial is rooted in the Constitution. This right is secured in civil and criminal cases to plaintiffs and defendants. This Court has an obligation in the exercise of its supervisory power to give meaning and content to that right, to assure that minimum constitutional requirements are met and to establish and enforce standards that will secure that right in emotionally charged litigation where probing inquiry is needed to cut through the prospective juror's subjective self-appraisal.

We would reverse defendant's conviction and remand for a new trial.

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.