PEOPLE v BEAMON

1. EVIDENCE—REAL EVIDENCE—FOUNDATION—ELEMENTS.

An adequate foundation consisting of testimony that the object offered is the same object which was involved in the incident and that the condition of the object is substantially unchanged must be laid prior to admission of real evidence in a criminal case.

2. EVIDENCE—REAL EVIDENCE—FOUNDATION—SUBSTANTIALLY UN-CHANGED CONDITION.

The nature of the article, the circumstances surrounding the preservation and custody of it, and the possibility of intermeddlers tampering with it are factors properly considered in determining whether real evidence offered for admission is substantially unchanged; admission into evidence in a murder trial of a work shirt worn by the deceased at the time of his death was error where no chain of custody was established for the shirt from the time of removal to the time of trial and where there was testimony that the shirt was not in the same condition at trial as when removed from the body of the deceased.

3. CRIMINAL LAW—WITNESSES—PROSECUTOR'S EXAMINATION—PRIOR ARRESTS AND CHARGES.

No inquiry may be made by the prosecutor on examination or cross-examination of any witness regarding prior arrests or charges against such witness which did not result in conviction nor with reference to higher original charges which have not resulted in conviction.

Appeal from Saginaw, Eugene Snow Huff, J. Submitted Division 3 May 10, 1973, at Lansing. (Docket No. 14855.) Decided November 1, 1973.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 769, 771, 1104.
[2] 29 Am Jur 2d, Evidence § 774.
[3] 58 Am Jur, Witnesses §§ 723, 724, 748, 750.

Edward Beamon was convicted of manslaughter. Defendant appeals. Reversed and remanded.

*John B. Phelps,* Assistant State Appellate Defender, for defendant.

Before: QUINN, P. J., and BRONSON and O'HARA,* JJ.

BRONSON, J. On July 23, 1971, defendant, Edward Beamon, was charged with second-degree murder.[1] A jury found him guilty of manslaughter on February 9, 1972.[2] He was sentenced on May 6, 1972, to serve 3-1/2 to 15 years in prison. Defendant appeals by right.

In spite of adequate opportunity, the prosecutor has failed to file any brief or other written objection to this appeal.[3] Without the benefit of the prosecutor's position this Court is forced to act first as the prosecutor's advocate and then as an impartial reviewer of the merits. The prosecutor's silence seriously impairs our *adversary* process of appellate review. This Court cannot condone unexplained prosecutorial silence in cases involving issues of legal significance.[4]

Defendant has briefed and argued several issues for our review. The common denominator of these allegations of error, if sustained, is their bearing

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.317; MSA 28.549.

[2] MCLA 750.321; MSA 28.553.

[3] It is this writer's personal view that the prosecutor's failure to respond in certain circumstances is tantamount to admission that the defendant's allegations of error are meritorious. *See, generally, People v Walma,* 26 Mich App 326 (1970), and *People v Hatfield,* 46 Mich App 149; 207 NW2d 474 (1973).

[4] The failure to provide a brief in this case is even more difficult to understand in light of the assistance to prosecutors offered by the Prosecuting Attorneys Appellate Service.

on defendant's claim of self-defense. The operative facts will facilitate our consideration of these questions.

Defendant and the deceased were neighbors. A quarrel developed between their children. During the respective fathers' attempts to resolve this quarrel a fatal scuffle developed. Defendant's theory of this altercation was self-defense and accident. Defendant claims the fatal shots were fired while the parties were facing each other. The people attempted to show the shots were fired at the deceased's back. The resolution of this factual dispute was pivotal to the theory of both the people and the defendant.

Eyewitness testimony on this point is conflicting. Other than this counterbalancing eyewitness testimony three areas of proof were possible to resolve the question of where the bullets entered deceased. First, a postmortem analysis of the actual wounds. Second, an examination of the tee shirt through which the bullets passed. Finally, examination of the work shirt worn by deceased at the time of his death. All would have materially aided in determining the question.

The people called a forensic pathologist who had conducted over 300 postmortems in cases involving violent death. There is no dispute concerning the pathologist's qualifications as an expert. It was the pathologist's opinion, based on his examination of the actual wounds, that the *entrance* wounds were in the *front,* thus supporting defendant's theory of self-defense and accident.

The deceased's tee shirt was removed at the hospital by the coroner along with the outer work shirt. The shirts were given to the police. The record is not entirely clear but it appears the two shirts were placed in the same evidence retention

envelope. Although an examination of the tee shirt may have shed light on the entrance-exit issue, no such examination was made. The 'tee shirt disappeared from police custody sometime prior to trial.

The third and last item, the work shirt, was examined. However, this evidence is not without taint akin to the unexplained loss of the tee shirt. The coroner testified that when he removed the shirts there was blood around one of the holes in the back of both the tee shirt and the work shirt. At trial there was no blood on the work shirt, nor was there blood on the work shirt at the time it was examined by the state police firearms expert. It appears that the shirt may have been laundered. The admissibility of this shirt must therefore be considered in light of certain basic principles.[5]

When offering real evidence [the work shirt] an adequate foundation for admission requires "testimony first that the object offered is *the* object which was involved in the incident, and further that the *condition* of the object is substantially unchanged". McCormick, Evidence (2d ed), § 212, p 527.[6] Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the possibility of intermeddlers tampering with it. If, after considering such factors, the trial judge is satisfied that in reasonable probability the article has not been changed in

---

[5] Our review of the record has disclosed this error. It was not raised on appeal. However, to prevent a miscarriage of justice we consider it *sua sponte. See: People v Sanders,* 43 Mich App 698, 703; 204 NW2d 706, 708 (1972) (concurring opinion of BRONSON, J.); *People v Deqraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969); and *People v Mattice,* 38 Mich App 333; 196 NW2d 345 (1972) (opinion by QUINN, J.).

[6] *See, also:* 7 Wigmore, Evidence (3d ed), § 2129, pp 564–569, wherein Professor Wigmore explains the importance of properly authenticating real proof.

important respects, he may permit its introduction in evidence. Applying these principles our review of the present record indicates insufficient foundation testimony on these factors to support admission of the work shirt. No chain of custody was established for the work shirt from time of removal to the time of trial. Furthermore there was testimony that the work shirt was not in the same condition at trial as when removed at the hospital. Admission of the shirt without proper foundation was error.

Defendant next claims that admission of evidence of other crimes for impeachment was error. One of the complained of prosecutorial questions was: "Didn't you attack a lady in the police station with a cane one time?" Questioning concerning prior convictions has recently been considered by our Supreme Court in *People v Falkner,* 389 Mich 628; 209 NW2d 193 (1973). *Falkner* held:

> "We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial." *Falkner, supra,* at 695; 209 NW2d at 199.

To the extent the prosecutor's questioning deviates from this rule it was error.

Admission of the work shirt was prejudicial. It was the opinion of the firearms expert, based on the work shirt, that the bullets entered in the back. This opinion goes to the heart of the defense. The jury deliberated for ten hours over a period of two days. Viewing the record in its entirety we cannot say that the jury might not have reached a different result if the *Falkner* rule was carefully

followed and the work shirt had been properly excluded.

Since the issue may arise again on retrial we turn to defendant's claim that the instruction on self-defense shifted the burden of proof to defendant. The precise instruction given was considered by a panel of this Court in *People v Fredericks,* 36 Mich App 632, 636; 194 NW2d 42, 44 (1971). In *Fredericks* it was expressly found that the instruction did not place the burden of proof upon the defendant. If the defendant feels the instruction could be reworded to accord greater clarity, then on retrial he should present the trial court with such an instruction.

Reversed and remanded.

All concurred.