PEOPLE v PRAST

Docket No. 78-4715. Submitted June 2, 1980, at Lansing.—Decided April 23, 1981.

Michael J. Prast, convicted by a jury in Genesee Circuit Court, Philip C. Elliott, J., of three counts of first-degree murder, appeals his conviction, contending that the trial court erred by refusing to grant his motion for a change of venue based upon extensive pretrial publicity and by denying his motion to suppress identifications made by witnesses at a pretrial lineup. *Held:*

1. The trial court abused its discretion by denying defendant's motion for change of venue. The community prejudice created by the publicity surrounding the investigation and trial was too great to ignore. The trial court should have recognized the substantial preconceived opinions held by local residents.

2. An improperly suggestive pretrial identification will not constitute reversible error if the subsequent in-court identification has an independent basis. Thre are eight factors to be considered in determining whether a subsequent in-court identification has an independent basis. On retrial, if the trial court finds the pretrial lineup identification impermissibly suggestive,

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 427.
     77 Am Jur 2d, Venue § 84.
[2] 21 Am Jur 2d, Criminal Law § 422.
     77 Am Jur 2d, Venue § 79.
     Construction and effect of statutory provision for change of venue for the promotion of the convenience of witnesses and the ends of justice. 74 ALR2d 16.
[3, 11] 21 Am Jur 2d, Criminal Law § 426.
     77 Am Jur 2d, Venue § 60.
[4] 47 Am Jur 2d, Jury § 213 *et seq.*
[5, 6] 21 Am Jur 2d, Criminal Law § 221
     47 Am Jur 2d, Jury §§ 47-49.
[7] 47 Am Jur 2d, Jury §§ 267, 269.
[8] 21 Am Jur 2d, Criminal Law § 399.
[9, 10] 29 Am Jur 2d, Evidence § 371.
     Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

it should consider those factors to determine whether an independent basis supports the in-court identification.

Reversed and remanded for entry of an order changing venue to a more appropriate jurisdiction for trial.

DANHOF, C.J., concurred but wrote separately to state his view that this decision, recognized by the panel as unfortunate, is necessary because defendant's constitutional right to trial before a fair and impartial jury was denied due to an abuse by the media of the First Amendment right of freedom of the press.

### OPINION OF THE COURT

1. APPEAL — VENUE — CHANGE OF VENUE — CRIMINAL LAW.

The decision on a motion for a change of venue is one that is within the discretion of the trial court and such a decision will not be reversed absent a clear abuse of discretion.

2. MOTIONS AND ORDERS — VENUE — CHANGE OF VENUE — BURDEN OF PROOF.

A party making a motion for a change of venue bears the burden of proving potential bias or adverse influence on the jury; this burden is not satisfied by a mere showing of pretrial publicity unless it is also shown that an impartial jury could not be obtained.

3. JURY — CRIMINAL LAW — NEWSPAPER AND RADIO REPORTS.

Jurors who have heard or have read of a criminal case, without more, are not disqualified as jurors in the case, and their inclusion does not deny a defendant a fair trial.

4. JURY — CHALLENGE FOR CAUSE.

A juror who has formed an opinion may not be challenged for cause providing the opinion is not positive in character and the juror is able to render an impartial verdict.

5. JURY — CRIMINAL LAW — IMPARTIAL JURY.

The right to a jury trial guarantees to the person accused of a crime a fair trial by a panel of impartial jurors who will render a verdict on evidence presented at the trial.

6. JURY — DUE PROCESS — CRIMINAL LAW.

Jurors need not be without impression or opinion in a criminal case to accord the defendant due process of law, but they must be able to lay aside their impressions and base their verdict on the evidence.

7. Jury — Evidence — Burden of Proof — Impartial Juror.

A trial held where the jury is under the influence of strong community feeling and there is a pattern of deep and bitter prejudice denies due process of law, but the burden of showing the existence of these conditions is upon the challenger.

8. Criminal Law — Venue — Change of Venue.

A trial court may properly defer determination on a request for a change of venue in a criminal case until an attempt has been made to select a jury in the county where the crime occurred.

9. Criminal Law — Pretrial Identification — In-Court Identification.

An improperly suggestive pretrial identification does not result in reversible error if the subsequent in-court identification had an independent basis.

10. Criminal Law — Witnesses — Evidence — Identification.

The factors to be considered in determining whether there exists an independent basis for an in-court identification where there has been an improper pretrial identification are: (1) the identifying witness's prior relationship with or knowledge of the defendant, (2) the witness's opportunity to observe the offense, this includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity to the alleged criminal act, (3) length of the time between the offense and the disputed identification, (4) accuracy or discrepancies in the prelineup or showup description and the defendant's actual description, (5) any previous proper identification or failure to identify the defendant, (6) any identification prior to lineup or showup of another person as defendant, (7) the nature of the alleged offense and the physical and psychological state of the victim, and (8) any idiosyncratic or special features of the defendant.

CONCURRENCE BY DANHOF, C.J.

11. Criminal Law — Venue — Motions — Change of Venue.

*It is an abuse of discretion for a trial court to deny a defendant's motion for a change of venue in a criminal trial where pretrial publicity makes it impossible for the defendant to obtain a trial before a fair and impartial jury.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief,

Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Habeeb Ghattas,* for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

PER CURIAM. Defendant appeals his conviction by a jury on three counts of first-degree murder, MCL 750.316; MSA 28.548. He raises eight issues, one of which requires reversal for a new trial.

On March 20, 1978, at about 7:50 p.m., two men entered the Sunshine Grocery Store in Flushing, Michigan, where two of the victims worked. Shortly thereafter the third victim, a patron of the store, also entered the premises. Several persons in the adjoining parking lot then heard three shots and saw two men run from the store and get into a nearby car, in which they escaped. The case received substantial attention in the local news media from the date of the killings to the time of defendant's trial. Prior to the trial, defense motions for change of venue due to pretrial publicity and for disqualification of all Genesee County circuit judges were denied. Additionally, defense motions to suppress the identifications of defendant, a confession made by defendant, and introduction of the alleged murder weapon were denied.

The defendant alleges as error the trial court's refusal to grant his motion for change of venue, based upon extensive pretrial publicity. MCL 762.7; MSA 28.850. The decision on such a motion is one within the discretion of the trial court, which decision will not be reversed absent a clear abuse of discretion. *People v Gerald Hughes,* 85

* Circuit judge, sitting on the Court of Appeals by assignment.

Mich App 8, 14; 270 NW2d 692 (1978). The moving party bears the burden of proving potential bias or adverse influence on the jury. This burden is not fulfilled by a mere showing of pretrial publicity unless it is also shown that an impartial jury could not be obtained. *People v Stockard,* 48 Mich App 680; 211 NW2d 62 (1973), *aff'd* 391 Mich 481; 219 NW2d 68 (1974).

In *People v Jenkins,* 10 Mich App 257, 261-262; 159 NW2d 225 (1968), this Court suggested an oft-quoted analysis of the effect of pretrial publicity on a defendant's right to a fair trial:

"Jurors who have heard of or have read of the case, without more, are not disqualified as jurors, and their inclusion does not deny defendant a fair trial. See *People v Quimby* (1903), 134 Mich 625; *People v Schneider* (1944), 309 Mich 158; *People v Dailey,* [6 Mich App 99 (1967)] *supra.* A juror who has formed an opinion may not be challenged for cause, providing the opinion is not positive in character, and he may render an impartial verdict. CL 1948, § 768.10 (Stat Ann 1958 Rev § 28.1033). In this case, all jurors who sat stated that they had no fixed opinion as to the guilt or innocence of the accused and that they could render a fair and impartial verdict.

\* \* \*

"We deal with the problem of prior information and community feeling as affecting a defendant's right to a fair trial. We are referred to and examine in detail the decision of *Irvin v Dowd* controlling. In American and Anglo-Saxon jurisprudence there is the invaluable right to jury. It must be a panel of impartial jurors. There must be a fair tribunal which renders a verdict on evidence presented at trial for a proceeding to meet the minimum standards of due process. It is not necessary that they be without impression or opinion. They must, however, be able to lay aside their impressions and base their verdict on the evidence. Where there is strong community feeling and a pattern of deep and bitter

prejudice in the community, the influence of that opinion makes a strong impression, nearly impossible to detach from the mental processes of the average man. Trial under such influence denies due process. The burden of showing the existence of these conditions is on the challenger."

See also *People v Garland,* 44 Mich App 243; 205 NW2d 195 (1972), *People v Freeman,* 16 Mich App 63; 167 NW2d 810 (1969), and *People v Bloom,* 15 Mich App 463; 166 NW2d 691 (1969). In the subsequent case of *People v Collins,* 43 Mich App 259; 204 NW2d 290 (1972), *lv den* 391 Mich 798 (1974), *cert den* 419 US 866; 95 S Ct 121; 42 L Ed 2d 103 (1974), this Court noted five factors which made valid the trial court's exercise of discretion:

1. Jury selection occurred several months after the majority of media coverage.

2. The trial judge permitted meticulous voir dire questioning, after which defense counsel chose not to exercise remaining peremptory challenges and stated "We have a jury".

3. The trial itself was not accompanied by extensive media coverage.

4. No "strong community feeling" or prejudice against defendant was perceived.

5. The record of trial disclosed no bias against defendant. See also *People v Gerald Hughes, supra.*

We count all of these factors on the opposite side of the ledger here. Throughout the period of investigation and arrest, and again prior to the trial, extensive local newspaper, radio and television coverage recurred. Photographs of the defendant and codefendant, Ricky Newell, were published on several occasions, with attention directed to their prison records. A local newspaper also published excerpts from the defendant's taped confession.

The effect of this comprehensive coverage was demonstrated during jury selection. Of the 47 veniremen questioned for the jury panel, only four knew nothing about the slayings. Among 13 jurors eventually selected to serve on the panel, 10 had heard of the case on the radio, nine from television, and nine from newspaper accounts of the slayings. One of these jurors also knew of the confession. Only two of the jurors stated that they knew nothing of the crime.

Additionally, unlike the circumstances in *Collins* and *Hughes,* defense counsel herein did not acquiesce in the selection at a time when he had peremptory challenges in hand. *People v Stockard, supra.* Rather, the jury was selected only after defense counsel's peremptory challenges were exhausted. Finally, our review of the record indicates that a "strong community feeling" against the defendant was apparent. See the comments of Justice LEVIN to petitioner Collins' application for leave, 391 Mich 798, 806-807 (1974). During voir dire, numerous instances of preconceived opinions were uncovered. The following colloquy is representative of the perspective of many potential jurors:

"*Mr. Jones [defense counsel]:* Do you recall that you did read or hear about a confession which allegedly Mr. Prast made?

"*Juror No. 10:* I read about it, yes.

"*Mr. Jones:* Now, at that time, did you form an opinion as to whether or not Mr. Prast was guilty?

"*Juror No. 10:* No, I could not form the opinion right then.

"*Mr. Jones:* What you are saying is then that you read or heard about the confession but you did not make any judgment or decision that yes, he was guilty?

"*Juror No. 10:* Well, concerning the confession, you know, if he said it, well then—

"*Mr. Jones:* Then he did it?

"*Juror No. 10:* Yes.

"*Mr. Jones:* Did you form any opinion as to what should be done with a man who would do such a thing?

"*Juror No. 10:* I do not remember forming an opinion [as to] what should be done with him.

"*Mr. Jones:* It did not matter to you; is that it?

"*Juror No. 10:* Well, yes, it did matter, but I cannot remember whether I formed an opinion.

"*Mr. Jones:* Then you do recall that Mr. Prast was identified as one of the people involved, is that correct?

"*Juror No. 10:* Yes.

"*Mr. Jones:* Now, knowing that the law enforcement agencies in Genesee County did in fact take Mr. Prast into custody and that he is now set for or must stand trial, do you think that there is a probability or a possibility that he is guilty?

"*Juror No. 10:* Yes.

"*Mr. Jones:* That he is probably guilty, is that correct? You are indicating by shaking your head that you think he is probably guilty, is that correct?

"*Juror No. 10:* Well, as far as the evidence now is concerned—

"*Mr. Jones:* I will ask to have the juror—prospective juror excused from the room so I can take a matter up with the Judge.

"*The Court:* What do you want to ask him?

"*Mr. Jones:* I want to ask that question fifty-six, which I think you have ruled—

"*The Court:* I am not going to allow you to ask question fifty-six.

\* \* \*

"*The Court:* Any challenge for cause by the prosecutor?

"*Mr. McGraw:* No, your Honor.

"*The Court:* Mr. Jones, challenge for cause?

"*Mr. Jones:* Yes, your Honor.

"I would challenge him for cause. He has stated that he feels that he is probably guilty. I would, therefore, ask that he be excused for cause.

*"The Court:* I will deny that."

We think the community prejudice created by the publicity surrounding the investigation and trial was too great to ignore. Although it was proper to defer a decision on the defendant's motion until an attempt to draw a jury was made, *People v Swift,* 172 Mich 473; 138 NW 662 (1912), the trial court should have recognized the substantial preconceived opinions held by local residents. Under these circumstances, the trial court, we think, abused its discretion by denying defendant's motion for change of venue. It is a most unfortunate and difficult decision because the evidence on the record compels the conclusion that the verdict was correct.

Our disposition of this issue renders further decisions as to the remaining issues unnecessary. However, because the question may arise again during retrial, we address a second issue raised by defendant.

Defendant alleges error in the trial court's refusal to suppress evidence of the defendant's identification at a pretrial lineup. He argues that the pretrial publicity tainted the lineup because his picture was published and viewed by witnesses prior to the identification. However, an improperly suggestive pretrial identification will not constitute reversible error if the subsequent in-court identification has an independent basis. *People v Reynolds,* 93 Mich App 516; 286 NW2d 898 (1979), *People v Stanton,* 97 Mich App 453; 296 NW2d 70 (1980). In *People v Kachar,* 400 Mich 78, 95-96; 252 NW2d 807 (1977), the Supreme Court itemized eight factors which indicate the presence of an independent basis:

"1. Prior relationship with or knowledge of the defendant.

"2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity to the alleged criminal act.

"3. Length of time between the offense and the disputed identification. See *[People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973)], for analysis of the curve of forgetting.

"4. Accuracy of discrepancies in the pre-lineup or showup description and defendant's actual description.

"5. Any previous proper identification or failure to identify the defendant.

"6. Any identification prior to lineup or showup of another person as defendant.

"7. Still another consideration, not mentioned in *[United States v] Wade,* [388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)], but essential to a determination of judging the reliability of the witness's perceptions is the nature of the alleged offense and the physical and psychological state of the victim * * *.

"8. Any idiosyncratic or special features of defendant."

On retrial, if the trial court finds the pretrial lineup identification impermissibly suggestive, it should consider the above factors to determine whether an independent basis supports the in-court identification

The defendant's conviction is reversed and the case is remanded for entry of an order changing venue to a more appropriate jurisdiction for trial.

DANHOF, C.J. *(concurring).* I concur with the result reached by the majority and their analysis. As stated therein, it is unfortunate that defendant should obtain a retrial because the evidence against him was overwhelming and his guilt cannot be doubted. However, this case illustrates what

can sometimes result from the combined effect of the constitutional right of freedom of the press and a defendant's right to trial before a fair and impartial jury.

The crime was certainly a newsworthy event at the time of its occurrence, as was the subsequent apprehension of the suspects. However, the various elements of the news media were not content to simply report the incident. Instead, they engaged in an almost frenzied competition to see who could put forth the most sensational story. The publicity subsided after defendant's apprehension, but then it seemed to rise to fever pitch again at the time the trial began. Indeed, at the very time the prospective jurors were being interviewed at the voir dire examination, they were subjected to the glare of television lights and cameras which were stationed in the hallway outside the judge's chambers where the examination was being conducted.[1] This additional publicity was recognized by the trial judge when he transferred the trial of the codefendant to another jurisdiciton.[2]

I believe that this case is an example of what can transpire when those who enjoy the benefit of the First Amendment fail to accept the responsibilities that go with it.

[1] Voir dire transcript, p 136.

[2] Codefendant Ricky Newell was convicted by a jury of three counts of first-degree murder and this Court affirmed the conviction in *People v Newell* (Docket No. 78-4640, decided November 6, 1980 [unreported]).