PEOPLE v PRAST (ON REHEARING)

Docket No. 78-4715. Submitted August 19, 1981, at Lansing.—Decided April 5, 1982.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 390.
77 Am Jur 2d, Venue §§ 48, 84.

[2, 16] 21 Am Jur 2d, Criminal Law § 389.
77 Am Jur 2d, Venue § 60.
Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.

[3] 46 Am Jur 2d, Judges §§ 166, 169.
Disqualification of judge by state in criminal case, for bias or prejudice. 68 ALR3d 509.

[4] 47 Am Jur 2d, Jury §§ 198, 200-202, 212.

[5] 29 Am Jur 2d, Evidence §§ 543, 578.
Use or administration of drugs or narcotics as affecting admissibility of confession. 69 ALR2d 384.

[6] 29 Am Jur 2d, Evidence §§ 543, 590.

[7] 16A Am Jur 2d, Constitutional Law § 848.
21A Am Jur 2d, Criminal Law § 803.
29 Am Jur 2d, Evidence § 371.4.
Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.

[8] 29 Am Jur 2d, Evidence § 371.
30 Am Jur 2d, Evidence § 1167.
Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

[9] 29 Am Jur 2d, Evidence §§ 485, 785, 791.
Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedure. 39 ALR3d 1000.

[10] 5 Am Jur 2d, Appeal and Error §§ 776, 778, 780, 781, 798.

[11] 29 Am Jur 2d, Evidence § 251.

[12] 29 Am Jur 2d, Evidence §§ 288, 827.

[13] 5 Am Jur 2d, Appeal and Error § 891.

[14] 5 Am Jur 2d, Appeal and Error § 810.
75 Am Jur 2d, Trial §§ 575, 623, 624, 727.

[15] 21 Am Jur 2d, Criminal Law §§ 130, 155.
When intoxication deemed involuntary so as to constitute a defense to criminal charge. 73 ALR3d 195.
Modern status of the rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.

Michael J. Prast and a codefendant were convicted of first-degree murder in Genesee Circuit Court, Phillip C. Elliott, J. Prior to the trial, the defendant moved for a change of venue claiming that pretrial publicity prevented a fair trial and for disqualification of all Genesee Circuit Court judges. The trial court denied the defendant's motion to disqualify the circuit judges but deferred its ruling on the defendant's motion for a change of venue until an attempt to select a jury was made. Defense motions to suppress the identifications of the defendant, evidence of a confession made by the defendant and the alleged murder weapon were denied. Jury selection took three days to complete and when a tentative jury was selected, the defendant moved to have the jury dismissed claiming that he had been forced to use peremptory challenges to excuse jurors who should have been released for cause. According to the defendant, this limited his ability to select a jury. The court denied his motion and the defendant was convicted. The defendant appealed and the Court of Appeals reversed his conviction, *People v Prast*, 105 Mich App 744; 307 NW2d 719 (1981). The people moved for a rehearing which was granted by the Court of Appeals. Now *held:*

1. The trial court did not abuse its discretion when it refused to order a change of venue. The trial court excluded all potential jurors who expressed opinions as to the defendant's guilt or innocence. The defendant has not demonstrated that the pretrial publicity resulted in a pattern of strong community feeling or bitter prejudice resulting in a jury that was not impartial.

2. The trial court did not err in denying the defendant's motion for disqualification of all the circuit judges. The defendant has failed to show that the trial judge or any other Genesee Circuit Court judge would be biased against the defendant just because a daughter of a fellow judge was a witness for the prosecution. The fact that the witness was a daughter of a judge was never brought to the attention of the jury. The defendant has failed to demonstrate any bias or prejudice resulting in the daughter's acting as a witness.

3. The trial court did not abuse its discretion when it limited defense counsel's voir dire, and the defendant was not prejudiced by this limitation. The trial court stopped defense counsel from asking the questions regarding the intoxication defense and substituted its own questions concerning the intoxication defense when a number of prospective jurors became confused by defense counsel's questions.

4. Viewing the entire record, the trial court's decision that

Prast's confession was voluntary was not erroneous. The Court of Appeals is unable to say that the trial court erred when it found that the defendant was not under the influence of drugs while he was confessing. In addition, the Court of Appeals cannot say that the trial court erred when it found that the defendant's confession was not coerced.

5. The trial court erred in not making findings of fact concerning an independent basis of identification in regard to the two witnesses who testified that their pretrial identifications of the defendant were assisted by newspaper photographs. However, such error was harmless because of the separate identification of the defendant by a witness who was not influenced by the photographs and the defendant's confession. The testimony of the witness placing the defendant in Flushing minutes before the crime was relevant and the trial court did not err in admitting it.

6. The trial court did not err in admitting the pistol into evidence because the pistol was found in the exact location indicated by the defendant and was the same model and make of pistol used in the crime. The police established a chain of custody tracing the possession of the pistol from the time it was discovered until it was admitted into evidence.

7. The trial court's instruction to the jury regarding the defendant's intoxication defense properly informed the jury that intoxication can negate the specific intent necessary for a conviction for first-degree murder. It also focused the jury's inquiry on whether or not the defendant possessed the specific intent necessary for commission of the crime. The defendant's conviction should not be reversed on this ground.

Affirmed.

G. R. CORSIGLIA, J., dissented. He would reverse the defendant's conviction and remand for a change of venue. He believes that the trial judge abused his discretion by refusing the defendant's request for a change of venue.

OPINION OF THE COURT

1. CRIMINAL LAW — CHANGE OF VENUE.

The denial of a motion for a change of venue in a criminal case is within the trial court's discretion; an abuse of discretion is not at issue where a trial court elects to defer determination on a request for a change of venue until jury selection has been attempted in the original county.

2. CRIMINAL LAW — CHANGE OF VENUE — PRETRIAL PUBLICITY.

The existence of pretrial publicity does not by itself require a

change of venue; if jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court, a change of venue is not necessary; for a change of venue to be granted, the defendant must demonstrate that there has been a pattern of strong community feeling or bitter prejudice against him and the publicity must be so extensive and inflammatory that jurors could not remain impartial when exposed to it.

3. JUDGES — DISQUALIFICATION.

Disqualification of a trial judge is required where the record discloses actual bias on the part of the judge or where the judge expresses a preconceived notion as to the defendant's guilt or innocence; a trial judge is not required to disqualify himself merely on the basis of rulings made in the course of a defendant's case or statements made in conjunction with such rulings.

4. JURY — VOIR DIRE.

The scope of voir dire examination of prospective jurors is within the discretion of the trial judge and his decision will not be set aside absent an abuse of discretion; the examination of prospective jurors may be conducted by the court or, in its discretion, by the attorneys; a trial judge does not err when he fails to ask specific questions requested by a defendant but does cover the area in another manner, and the questions asked must be sufficient to afford defense counsel the information necessary to challenge prospective jurors.

5. WITNESSES — CRIMINAL LAW — CONFESSIONS — WALKER HEARINGS.

A *Walker* hearing is designed to determine the voluntariness of a defendant's confession from the totality of the circumstances surrounding such confession; the fact that a defendant's confession was taken while he was under the influence of drugs or alcohol is not dispositive; rather, the voluntariness of a defendant's confession is a question of fact which is decided by viewing the totality of the circumstances surrounding the confession.

6. WITNESSES — CRIMINAL LAW — CONFESSIONS — APPEAL..

The Court of Appeals, in reviewing a trial court's determination regarding the voluntariness of a defendant's confession, will affirm such determination unless it is left with a definite and firm conviction, after it examines the entire record and makes an independent determination of voluntariness, that the trial judge erred; deference will be given to the findings of the trial

court where there is conflicting evidence and the determination of voluntariness depends on the witnesses at the hearing.

7. CRIMINAL LAW — LINEUP — CONSTITUTIONAL LAW — EVIDENTIARY HEARING.

A defendant is entitled to an evidentiary hearing where the admissibility of evidence is challenged on constitutional grounds; the right to such a hearing extends to a defendant's claim of a constitutionally improper lineup; at the hearing, the trial court must determine if the defendant was denied due process because the lineup was unnecessarily suggestive and conducive to irreparable misidentification procedures; a claimed violation of due process in the conduct of a lineup depends on the totality of the circumstances surrounding it and if evidence of a constitutionally impaired lineup is introduced at trial, the defendant's conviction must be reversed unless it can be shown that the error was harmless.

8. CRIMINAL LAW — PRETRIAL IDENTIFICATION — IN-COURT IDENTIFICATION.

An identification of a defendant at trial may be allowed where the prosecution has demonstrated, by clear and convincing evidence, that the witness's in-court identification has a basis independent of a constitutionally impaired pretrial identification.

9. CRIMINAL LAW — IDENTIFICATION OF DEFENDANT — NEWSPAPER PHOTOGRAPHS.

An identification of a defendant by a witness in a criminal case should be excluded where it is based upon a newpaper photograph rather than the witness's own perceptions.

10. CRIMINAL LAW — APPEAL — HARMLESS ERROR.

An error at trial is harmless if the defendant was not prejudiced; the standards for determining whether error is reversible or merely harmless are (1) whether the error is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless and (2) if not so basic, whether it is harmless beyond a reasonable doubt.

11. EVIDENCE — RELEVANT EVIDENCE — RULES OF EVIDENCE.

All relevant evidence is admissible except as otherwise provided by the constitution or rules of evidence; relevant evidence means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence (MRE 401, 402).

12. EVIDENCE — FOUNDATION — WEAPONS.

An adequate foundation for the admission of tangible evidence in a criminal case requires that the prosecution show that the object offered is the object which was involved in the incident and that the condition of the object is substantially unchanged and when determining if the object should be admitted the trial court should consider the nature of the article, the circumstances surrounding the preservation and custody of it and the possibility of intermeddlers tampering with it; breaks in the chain of custody do not require exclusion of the evidence if the prosecution shows that the article is what it is purported to be and shows that it is connected with the crime or the accused; a weapon does not have to be tied ballistically to the crime to be admissible.

13. APPEAL — JURY INSTRUCTIONS.

A defendant's failure to object to the jury instructions at trial precludes appellate review of such instructions except where a miscarriage of justice would otherwise result.

14. TRIAL — JURY INSTRUCTIONS.

A trial judge has a duty to instruct the jury on the law so that jurors understand and are able to apply the law to the facts of the case, and the trial court must instruct a jury on the defense theory where evidence supports the theory; a defendant's conviction may be reversed where the jury instructions are misleading or erroneous.

15. CRIMINAL LAW — DRUNKENNESS — INTOXICATION DEFENSE — INTENT — LARCENY.

Drunkenness cannot excuse crime, but when a certain intent is a necessary element in a crime the crime cannot have been committed when the intent did not exist.

DISSENT BY G. R. CORSIGLIA, J.

16. CRIMINAL LAW — VENUE — CHANGE OF VENUE.

*It is an abuse of discretion for a trial court to deny a defendant's motion for a change of venue in a criminal trial where pretrial publicity makes it impossible for the defendant to obtain a trial before a fair and impartial jury.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appel-

late Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Habeeb Ghattas,* for defendant on appeal.

ON REHEARING

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

M. J. KELLY, J. On March 20, 1978, three persons were shot and killed during an armed robbery of a Sunshine Dairy Store in Flushing, Michigan. The defendant and Ricky Newell were arrested and charged with three counts of first-degree murder, MCL 750.316; MSA 28.548. Prior to trial, counsel for the defendant moved for a change of venue claiming that pretrial publicity prevented a fair trial and for disqualification of all Genesee County Circuit Court judges. The trial court denied the defendant's motion to disqualify the circuit court judges but deferred its ruling on defendant's motion for a change of venue until an attempt to select a jury was made. Additionally, defense motions to suppress the identifications of defendant, a confession made by defendant and the alleged murder weapon were denied.

Defendant's trial began on August 15, 1978, and jury selection took three days to complete. When a tentative jury was selected, defendant moved to have the jury dismissed, claiming that he had been forced to use peremptory challenges to excuse jurors who should have been released for cause. According to the defendant, this limited his ability to select a jury. The court denied his motion and defendant was convicted on all three counts of murder in the first degree.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant appealed his conviction claiming that pretrial publicity prevented a fair trial. On April 23, 1981, this Court reversed defendant's conviction on a finding that the trial court abused its discretion when it refused defendant's request for a change of venue. *People v Prast,* 105 Mich App 744; 307 NW2d 719 (1981). The prosecution applied for a rehearing, which this Court granted on May 11, 1981.

## I

The denial of a motion for a change of venue is within the trial court's discretion, and its decision will not be reversed unless there has been an abuse of discretion. *People v Swift,* 172 Mich 473, 479-480; 138 NW 662 (1912), *People v Clay,* 95 Mich App 152, 160; 289 NW2d 888 (1980). An abuse of discretion has been defined in different ways. Whether it is tested by *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959),[1] or by the often alluded to stricter standard of *People v Williams,* 386 Mich 565, 573; 194 NW2d 337 (1972), in criminal cases, it is nevertheless clear that an

---

[1] In *Spalding, supra,* 384, the Supreme Court gave the following definition:

"Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

However, Justice LEVIN, in a concurring opinion, has criticized the use of this test claiming the *Spalding* "hyperbolic standard" leads judges and lawyers to believe that discretionary decisions are immune from review. *People v Talley,* 410 Mich 378, 396; 301 NW2d 809 (1981).

abuse of discretion is not implicated where a trial court elects to defer determination on a request for change of venue until jury selection has been attempted in the original county. *Swift, supra,* 481-482, *People v Collins,* 43 Mich App 259, 262; 204 NW2d 290 (1972), *lv den* 391 Mich 798 (1974).

The existence of pretrial publicity does not by itself require a change of venue. *Murphy v Florida,* 421 US 794; 95 S Ct 2031; 44 L Ed 2d 589 (1975). If jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court, a change of venue is not necessary. *Irvin v Dowd,* 366 US 717, 722-723; 81 S Ct 1639; 6 L Ed 2d 751 (1961), *Swift, supra,* 481-482, *People v Dixon,* 84 Mich App 675, 679; 270 NW2d 488 (1978). For a change of venue to be granted, the defendant must demonstrate that there is a pattern of strong community feeling or bitter prejudice against him, and the publicity must be so extensive and inflammatory that jurors could not remain impartial when exposed to it. *Clay, supra,* 160, *Collins, supra,* 263.

In *Irvin, supra,* the defendant, who was convicted of murder, sought a writ of habeas corpus claiming that the trial court erred when it refused to grant a change of venue because of pretrial publicity. Prior to trial, newspaper, radio and television news stories revealed previous crimes committed by the defendant, his identification in a police lineup, his taking of a lie detector test, and his confession to six other murders. Many of the stories described defendant as the "confessed slayer of six", a parole violator, and fraudulent check artist. The jury panel consisted of 430 persons. The court itself excused 268 of those on challenges for cause as having fixed opinions as to

the guilt of petitioner; 103 were excused because they objected to the death penalty; 20 were peremptorily challenged by the defendant and 10 by the state. Ninety percent of all jurors questioned entertained some opinion as to defendant's guilt. The Supreme Court, recognizing that jurors need not be totally ignorant of the facts and issues involved, stated that the jurors must be able to lay aside their impressions and render a verdict based upon the evidence introduced in court. *Id.,* 722-723. Granting the writ of habeas corpus, the Court wrote:

"Here, the 'pattern of deep and bitter prejudice' shown to be present throughout the community, *cf. Stroble v California,* 343 US 181; 72 S Ct 599; 96 L Ed 872 (1952), was clearly reflected in the sum total of the *voir dire* examination of a majority of the jurors finally placed in the jury box. Eight out of the 12 thought petitioner was guilty. With such an opinion permeating their minds, it would be difficult to say that each could exclude this preconception of guilt from his deliberations. The influence that lurks in an opinion once formed is so persistent that it unconsciously fights detachment from the mental processes of the average man. See *Delaney v United States,* 199 F2d 107 (CA 1, 1952); 39 ALR2d 1300. Where one's life is at stake—and accounting for the frailties of human nature—we can only say that in the light of the circumstances here the finding of impartiality does not meet constitutional standards. Two-thirds of the jurors had an opinion that petitioner was guilty and were familiar with the material facts and circumstances involved, including the fact that other murders were attributed to him, some going so far as to say that it would take evidence to overcome their belief." *Id.,* 727-728.

In the case at bar, numerous news stories about Prast's involvement in the three murders were carried by local newspapers, radio and television.

Prior to trial, 20 stories appeared in the local newspaper. While most of the stories were unbiased accounts of the murder or the pretrial proceedings, several of the articles informed the public of the defendant's confession and his identification by witnesses. A March 31, 1978, story related that defendant had been convicted of unarmed robbery and was considered a high risk for parole. Another story, entitled, "The Prast Tape: 'He kept saying we had to kill' ", contained excerpts from Prast's taped confession. This story was followed the next day by another story also containing excerpts from the confession. Similar stories were carried on radio and television. In all, there was considerable pretrial publicity, but this quantum alone does not establish an indelible high water mark compelling the grant of a motion for a change of venue. Rather, we must examine the jury voir dire to determine if an impartial jury was impaneled.

The selection of the jury commenced on August 15, 1978, and took three days to complete. Prior to beginning the jury voir dire, the trial judge instructed the entire jury panel not to read or listen to news accounts of the trial. He also instructed them not to talk about the case among themselves or with others. After giving these instructions, he asked that any venireman, who could not render an impartial verdict based upon the evidence presented at trial, step forward and be excused. Thirty-six potential jurors from the entire panel were excluded by this method. No objection to this method was made by defense counsel. Next, the trial court conducted voir dire of each potential juror individually out of the presence of the others. In all, 47 jurors were examined in this manner. Only 5 of the potential jurors had heard

nothing about the 3 murders and 11 were aware of a community feeling that the 3 murders were considered "bad crimes". During the individual voir dire, 10 prospective jurors were dismissed for cause, 2 of them because they had formed an opinion as to defendant's guilt. In addition to those released for cause, 20 were dismissed by defendant's use of peremptory challenges while the prosecutor exercised 4 peremptory challenges. The final jury consisted of 13 jurors of which only 1 had heard nothing of the crime. All 13 stated that they had no opinion as to defendant's guilt and stated that they would follow the trial court's instructions. Only 1 of the 13 jurors chosen had been challenged for cause.

Upon reconsideration, we find that the trial court did not abuse its discretion when it refused to change venue. Unlike *Irvin, supra,* no members of the jury panel expressed an opinion as to the defendant's guilt. In stark contrast to *Irvin,* the trial court excluded all potential jurors who expressed opinions as to defendant's guilt or innocence. Furthermore, only one of the actual jurors was challenged for cause. While a number of potential jurors stated that they were aware of community feeling, 11 of the jurors selected were unaware of any community feeling. Furthermore, the two jurors who were aware of a community feeling stated that the community felt that the three murders were bad crimes. This does not demonstrate a compelling or intolerable pattern of strong community feeling. Defendant's failure to demonstrate that the pretrial publicity resulted in a pattern of strong community feeling or bitter prejudice resulting in an impartial jury requires us to vacate our original decision in *People v Prast,* 105 Mich App 744; 307 NW2d 719 (1981).

Because we have vacated our original decision, we will examine the other issues raised by defendant on appeal.

II

Defendant alleges that the trial judge erred when he denied the defendant's motion to disqualify all Genesee County Circuit Court judges because one of the primary prosecution witnesses was a daughter of a Genesee Circuit Court judge. Disqualification of a trial judge is required where the record discloses actual bias on the part of the judge or where the judge expresses a preconceived notion as to the defendant's guilt or innocence. *People v Gibson (On Remand)*, 90 Mich App 792, 796; 282 NW2d 483 (1979), *lv den* 408 Mich 868 (1980). A trial judge does not have to disqualify himself merely on the basis of rulings made in the course of a defendant's case or statements made in conjunction with such rulings. *Id.*, 797, fn 2, *People v Rorke*, 80 Mich App 476, 480; 264 NW2d 30 (1978).

In this case, defendant has failed to show that the trial judge or any other Genesee County Circuit Court judge would be biased against defendant just because a daughter of a fellow judge was a witness for the prosecution. Furthermore, the fact that the witness was a daughter of a judge was never brought to the attention of the jury. Therefore, the defendant has failed to demonstrate any bias or prejudice resulting from the daughter's acting as a witness. Defendant's allegation that certain statements made by the trial judge while ruling on motions made by defense counsel also fail to demonstrate bias or prejudice. We find no merit in this issue.

## III

Defendant next alleges that the trial court erred when it refused to allow defense counsel to ask prospective jurors questions concerning defendant's proposed intoxication defense during voir dire. The scope of voir dire examination of jurors is within the discretion of the trial judge and his decision will not be set aside absent an abuse of discretion. *People v Harrell,* 398 Mich 384, 388; 247 NW2d 829 (1976). The examination of prospective jurors may be conducted by the court or, in its discretion, by the attorneys. *Id.,* 388. A trial judge does not err when he fails to ask specific questions requested by a defendant but does cover the area in another manner. *People v Bass,* 88 Mich App 793, 798; 279 NW2d 551 (1979), *People v Jolly,* 51 Mich App 163, 166; 214 NW2d 849 (1974). The questions asked must be sufficient to afford defense counsel the information necessary to challenge the prospective jurors. *Harrell, supra,* 388, *Bass, supra,* 798.

During the first day of voir dire, the trial judge allowed defense counsel to ask prospective jurors questions concerning defendant's intoxication defense. These questions concerned whether the juror could find defendant not guilty of first-degree murder if the evidence showed that he was intoxicated at the time of the killings, negating the specific intent required in first-degree murder. However, when a number of jurors became confused by defense counsel's questions, the trial court stopped defense counsel from asking the questions and substituted its own questions concerning defendant's intoxication defense. During the second and third day of the jury voir dire, the trial judge continued to propound questions con-

cerning the intoxication defense but did allow
defense counsel to ask further questions when a
juror appeared to be confused. A number of jurors
were dismissed for cause because they were unable
to accept an intoxication defense. In this case, the
trial court did not abuse its discretion when it
limited defense counsel's voir dire and the defen-
dant was not prejudiced by this limitation.

## IV

Defendant also contends that the trial court
erred when it admitted a tape of his confession
into evidence. Prior to trial, defendant moved for a
*Walker*[2] hearing claiming that the confession was
involuntary because he was under the influence of
heroin and the police used coercive tactics to
extract the confession. After the hearing, the trial
court denied defendant's motion.

A *Walker* hearing is designed to determine the
voluntariness of a defendant's confession. The fact
that defendant's confession was taken while he
was under the influence of drugs or alcohol is not
dispositive. *People v Crawford,* 89 Mich App 30,
34; 279 NW2d 560 (1979), *People v Dunlap,* 82
Mich App 171, 176; 266 NW2d 637 (1978), *People v
Maliskey,* 77 Mich App 444, 450-451; 258 NW2d
512 (1977). Rather, the voluntariness of a defen-
dant's confession is a question of fact which is
decided by viewing the totality of the circum-
stances surrounding the confession. *Crawford, su-
pra,* 32, *People v Stanis,* 41 Mich App 565, 576;
200 NW2d 473 (1972). When reviewing the trial
court's ruling, this Court will examine the entire
record and reach an independent determination of

_____

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87
(1965).

voluntariness. *Crawford, supra,* 33. However, where there is conflicting evidence and the determination of voluntariness depends on the witnesses at the hearing, deference will be given to the findings of the trial court. *Crawford, supra,* 34. Absent a definite and firm conviction that the trial court erred, we will affirm its decision. *Crawford, supra,* 33, *People v Maliskey,* 77 Mich App 444, 450; 258 NW2d 512 (1977).

On the evening of March 24, 1978, the police arrested defendant at the home of Odeeva Cox in Taylor, Michigan. Defendant and his wife were placed in the back of a police cruiser and driven to Flint by Sergeant William Peraino and Sergeant O'Dell. When they arrived in Flint, Peraino read defendant his *Miranda*[3] rights whereupon the disputed confession was given.

Initially, Prast argues that he was under the influence of narcotics when he gave his confession. During the *Walker* hearing, the defendant's wife testified that the defendant used drugs often and that, when he was arrested, he appeared to be under the influence of some drug. Odeeva Cox also testified at the *Walker* hearing that Prast had taken heroin about an hour before his arrest. At the preliminary hearing, Sergeant Peraino stated that Prast did not appear to be under the influence of drugs. The prosecution also introduced a tape of the confession taken the night of his arrest. On the tape, defendant's answers to Sergeant Peraino's questions did not support his claim that he was under the influence of drugs. Defendant was able to relate details of the crime without leading questions from the detectives present. Fur-

---

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

thermore, many of his answers were exculpatory and he refused to answer questions which would implicate others in the crime. Finally, his answers were consistent throughout the questioning. After reviewing the entire record, we are unable to say that the trial court erred when it found that the defendant was not under the influence of drugs while he was confessing.

Defendant also claims that his confession was coerced. According to the defendant, Sergeant Peraino threatened him with a pistol while driving from Taylor to Flint. However, the defendant's wife did not testify that Peraino threatened the defendant and Peraino denies that he ever threatened Prast with his pistol. Under these circumstances, we cannot say that the trial court erred when it found that defendant's confession was not coerced. Viewing the entire record, the trial court's decision that Prast's confession was voluntary was not erroneous.

V

During the trial, defendant was identified by three witnesses. The prosecution also introduced evidence which showed that two of the witnesses identified defendant at a lineup held on March 27, 1978. On appeal, defendant objects, claiming that the lineup and the in-court identifications were tainted by newspaper photographs which were printed prior to the lineup.

A defendant is entitled to an evidentiary hearing where he challenges a lineup on constitutional grounds. *People v Reynolds,* 93 Mich App 516, 519; 286 NW2d 898 (1979). At the hearing, the trial court must determine if the defendant was denied

due process because the lineup was unnecessarily suggestive and conducive to irreparable misidentification procedures. *Stovall v Denno,* 388 US 293, 301-302; 87 S Ct 1967; 18 L Ed 2d 1199 (1967), *People v Anderson,* 389 Mich 155, 169; 205 NW2d 461 (1973). A claimed violation of due process in the conduct of a lineup depends on the totality of the circumstances surrounding it. *Stovall, supra,* 302. If evidence of a constitutionally impaired lineup is introduced at trial, defendant's conviction must be reversed unless it can be shown that the error was harmless. *Gilbert v California,* 388 US 263, 273-274; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), *Anderson, supra,* 169.

Where a pretrial identification is constitutionally impaired, an identification of a defendant at trial may be allowed where the prosecution has demonstrated, by clear and convincing evidence, that the witness's in-court identification has a basis independent of the pretrial identification. *United States v Wade,* 388 US 218, 239; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), *People v Kachar,* 400 Mich 78, 91; 252 NW2d 807 (1977), *Anderson, supra,* 167. In *Kachar, supra,* 95-96, three justices of the Supreme Court enumerated a number of factors to be considered by the trial court when determining if an independent basis existed. This Court has adopted these factors when analyzing whether an independent basis exists. *Reynolds, supra,* 520.

Defendant challenges the propriety of the lineup,[4] preliminary examination, and in-court

---

[4] While defendant failed to object to the lineup identification, we will review this question because it alleges a violation of a constitutional right. *People v Hoerl,* 88 Mich App 693, 696; 278 NW2d 721 (1979), *People v Cotton,* 38 Mich App 763, 767; 197 NW2d 90 (1972).

identifications made by Susan Ransom, Dennis Shepp and William Youmans. On March 20, 1978, Youmans, a gas station attendant, allegedly saw defendant with codefendant Newell shortly before the crime. That same night, after hearing shots, Ransom and Shepp, who were parked outside the Sunshine Dairy, saw defendant run from the store. Both Ransom and Shepp identified Prast in a lineup held on March 27, 1978. All three witnesses identified defendant at the preliminary examination and during trial. According to the defendant, these identifications should have been excluded because they were the product of a newspaper photograph of Prast printed on March 25, 1978.

During the preliminary examination held on April 11, 12, and 13, witness Shepp admitted that the publication of defendant's picture in newsprint did partially assist his identification of the defendant at the lineup. Witness Youmans also testified at the preliminary examination that the photograph of defendant assisted him in making the identification and that he had watched television and seen pictures of Prast on TV which helped or assisted him in making the identification. These admissions were countered by testimony that the witnesses were in a position to see the defendant, the area was well lighted and defendant made no attempt to hide or disguise himself. Witness Youmans had two opportunities to see the defendant, since he and his codefendant twice came to the gas station where he was working shortly before the shootings. Witness Ransom, on the other hand, was not influenced by photographs or television images and testified at trial that she could not even recall having seen any photographs of the defendant in the newspapers.

Where an identification of a defendant is based upon a newspaper photograph rather than the witness's own perceptions, it should be excluded. Because both Youmans and Shepp admitted their pretrial identifications were assisted by newspaper photographs, those identifications should have been excluded unless the trial court determined that in each case there was an independent basis for their in-court identifications. While the trial court heard arguments concerning whether an independent basis existed, it never made findings of fact concerning the factors enumerated in *Kachar, supra.* Normally a trial court's failure to make such findings requires a remand for an evidentiary hearing on the issue. *Reynolds, supra,* 520-521. However, a remand will not be required if we determine that the allowance of Youmans's and Shepp's pretrial and trial identifications constituted only harmless error. In scrutinizing this issue, we must determine if Ransom's identification was without taint and therefore wholly proper.

An error at trial is harmless if no prejudice to the defendant occurred. *People v Swan,* 56 Mich App 22, 31; 223 NW2d 346 (1974). In *Swan, supra,* 31, the Court set out the following standard:

"Where it is claimed that error is harmless, two inquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * * Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?"

The purpose of the first inquiry is to deter prosecutorial and police misconduct and to safeguard those individual rights which are so fundamental

that the impact of their violation cannot be fully assessed. *Id.,* 32, fn 6. The second inquiry focuses on whether the error might have aided in convincing an otherwise undecided juror of defendant's guilt beyond a reasonable doubt. *Id.,* 33.

In this case, the exclusion of Youmans's and Shepp's identifications would not deter police or prosecutorial misconduct since there was no evidence of misconduct. The erroneous identifications were based upon a newspaper photograph and not any police or prosecutorial misconduct. Nor did the printing of defendant's photograph in the newspaper violate any of his fundamental rights. Finally, we do not find that the identifications would have aided in convincing an undecided juror of defendant's guilt. At trial, Ransom identified Prast as one of the men she saw running from the Sunshine Dairy after the shooting. During the preliminary examination and trial, she denied that the newspaper photograph aided her identification of defendant. Furthermore, she was unsure whether she had seen the photographs prior to the March 27, 1978, lineup. Ransom's identification coupled with defendant's confession makes the introduction of Youmans's and Shepp's identifications harmless error.

In a related argument, Prast claims that Youmans's testimony should have been excluded because it was irrelevant. MRE 402 states that all relevant evidence is admissible, except as otherwise provided by the constitution or rules of evidence. MRE 401 states that relevant evidence means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Youmans's testimony placed defendant in Flushing minutes

prior to the crime. It also placed him with a codefendant. The evidence was relevant and the trial court did not err in admitting it.

## VI

During the trial, defendant objected to the introduction of a .357 magnum pistol claiming a proper foundation had not been laid. An adequate foundation for the admission of tangible evidence requires that the prosecution show that the object offered is the object which was involved in the incident and that the condition of the object is substantially unchanged. *People v Kemp,* 99 Mich App 485, 489; 298 NW2d 1 (1980), *People v Beamon,* 50 Mich App 395, 398; 213 NW2d 314 (1973). When determining if the object should be admitted, the trial court should consider the nature of the article, the circumstances surrounding the preservation and custody of it, and the possibility of intermeddlers tampering with it. *Kemp, supra,* 490, *Beamon, supra,* 398. A weapon does not have to be tied ballistically to the crime to be admissible. *People v Kramer,* 103 Mich App 747, 759; 303 NW2d 880 (1981). Finally, breaks in the chain of custody do not require exclusion of the evidence if the prosecution shows that the article is what it is purported to be and shows that it is connected with the crime or the accused. *Kemp, supra,* 489, *People v Stevens,* 88 Mich App 421, 424; 276 NW2d 910 (1979).

The pistol in this case was found on the bottom of the river. During his confession, Prast informed the police of the exact location of the pistol. The police later went to the river and, using a magnet, found a .357 magnum in the exact location which defendant had revealed to them. When the pistol

was taken from the river, it was wired to a box and taken to the Bridgeport State Police Laboratory where tests were performed on it. Because hollow point bullets were used in the murders, the police laboratory technician could not say that the victims were shot with this particular pistol, although he did opine that the pistol could have fired the bullets. Evidence establishing a chain of custody was also introduced. Because the pistol was found in the exact location described by the defendant and was the same model and make of pistol used in the crime, the trial court did not err when it admitted the pistol. Furthermore, the police established a chain of custody tracing the possession of the pistol from the time it was discovered until it was presented into evidence. The defendant's claim that the pistol should have been excluded is without merit.

## VII

Finally, defendant argues that the jury instructions concerning his intoxication defense were erroneous. Defendant's failure to object to the jury instruction waives appellate review unless a miscarriage of justice would occur. *People v Haney,* 86 Mich App 311, 318; 272 NW2d 640 (1978).

The trial judge has a duty to instruct the jury on the law so that jurors understand and are able to apply the law to the facts of the case. *People v Rappuhn,* 78 Mich App 348, 353; 260 NW2d 90 (1977). A defendant's conviction may be reversed where the jury instructions are misleading or erroneous. *People v Townes,* 391 Mich 578, 587; 218 NW2d 136 (1974), *People v Maliskey,* 77 Mich App 444, 454; 258 NW2d 512 (1977). The trial court must instruct a jury on the defense theory

where evidence supports the theory. *People v Ritsema,* 105 Mich App 602, 609; 307 NW2d 380 (1981).

During the trial, defendant presented an intoxication defense in an effort to negate the specific intent required in first-degree murder. In *People v Crittle,* 390 Mich 367, 371; 212 NW2d 196 (1973), the Supreme Court, citing *People v Walker,* 38 Mich 156, 158 (1878), stated the following rule concerning intoxication as a defense to a specific intent crime.

"While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. In larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass; but it consists in the wrongful taking with felonious intent; and if the defendant for any reason whatever, indulged no such intent, the crime cannot have been committed."

The Supreme Court reversed defendant's conviction because the trial court's instructions concerning defendant's intoxication defense directed the jury to consider the defendant's capacity to form specific intent and not whether he actually possessed the specific intent. *Crittle, supra,* 373.

In this case, the trial court instructed the jury as follows:

"Just as murder cannot be committed without malice, there can be no robbery unless there is an intent to steal. An intent to steal may be proven indirectly by inference from facts or circumstances from which it logically and reasonably follows. Sometimes actions speak louder than words.

"Voluntary intoxication from alcohol or narcotics is

not a defense to the crime of robbery, but a robbery cannot be committed unless the defendant had the intent to steal, and he could not rob or attempt to rob if his mental capacity was so far diminished or overcome that he did not have that intention.

"On the other hand, if he did intend to steal, it is no defense that he was, if he was, drunk or drugged to whatever extent or that his mental capacity was diminished from the use of intoxicants or drugs. The question is whether he intended to steal, not whether he was under the influence of drink or drugs."

This jury instruction properly informs the jury that intoxication can negate the specific intent necessary for a conviction for first-degree murder. It also focuses the jury's inquiry on whether or not defendant possessed the specific intent. The instruction fulfills the requirements established in *Crittle, supra,* and the defendant's conviction will not be reversed on these grounds.

We vacate our initial decision in *People v Prast,* 105 Mich App 744; 307 NW2d 719 (1981), and affirm defendant's conviction.

Affirmed.

DANHOF, C.J., concurred.

G. R. CORSIGLIA, J. *(dissenting).* I dissent from the majority opinion vacating our original decision in *People v Prast,* 105 Mich App 744; 307 NW2d 719 (1981). The reasons for my dissent are set forth in the original majority opinion, which is incorporated by reference herein.

In addition, I would emphasize that the venue issue presented by this case was a close and difficult question. As stated by Chief Judge DANHOF in his original concurring opinion, "it is unfortunate that defendant should obtain a retrial when the evidence against him was overwhelming * * *".

However, 57 percent of the jury panel was excused for cause in this case. Change of venue was the appropriate and relatively simple remedy to avoid a potentially biased and tainted jury. In view of the circumstances present at the time of trial, the trial judge abused his discretion by refusing the defendant's request for a change of venue.